UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ROBERT ROYCE BYFORD,

    Petitioner,                                        3:11-cv-00112-JCM-WGC

vs.

**ORDER**

RENEE BAKER, *et al.*,

    Respondents.

_____/

    In this capital habeas corpus action, there is, before the court, a motion for stay and abeyance (ECF No. 31) filed by the petitioner, Robert Royce Byford. The court will grant that motion, and stay this action pending the conclusion of Byford's ongoing state-court habeas corpus proceedings.

    Byford filed a petition for writ of habeas corpus in this matter on February 15, 2011. ECF No. 1. On December 2, 2011, with his amended petition due on December 15, 2011, Byford filed a motion for an order from this court compelling the respondent to provide a viable venue for a neuropsychological evaluation of the petitioner. ECF No. 11. Byford argued at the time that such an evaluation was necessary in order to plead an ineffective assistance of counsel claim based on counsel's alleged failure to investigate and present evidence of organic brain damage. *Id*.

    While the motion to compel remained pending, Byford sought and obtained an extension of time, until December 30, 2011, within which to file his amended petition. ECF No. 14. On

December 22, 2011, Byford filed a withdrawal of his motion to compel[1] and a request for an order that either prospectively tolled the statute of limitations period from January 3, 2012, to March 1, 2012, or permitted him to amend his petition once he obtained the results of the evaluation. ECF No. 15. However, on January 3, 2012, he filed his amended petition, which contains a claim (Claim Five) that his trial counsel was ineffective in failing to ascertain whether, and to what extent, Byford is impaired by brain damage. ECF No. 17. So, the court denied Byford's motion for prospective equitable tolling or leave to amend without prejudice and denied his motion to compel as moot. ECF No. 21.

On May 18, 2012, prior to the the State's response to the first amended petition, Byford filed a motion for leave to file a second amended petition. ECF No. 27. While that motion was pending, Byford filed the motion for stay and abeyance that is currently before the court for decision. ECF No. 31. Respondents subsequently filed a response to the motion for leave to amend indicating that they did not object to the filing of the pleading, with the one condition that petitioner provide a statement of exhaustion as required by LSR 3-1 and Rule 2 of the Rules Governing Section 2254 Cases in the Federal District Courts. ECF No. 38.

Upon the petitioner's submission of a second amended petition that contains a statement of exhaustion with respect to the claims contained therein, the court granted Byford leave to amend. ECF No. 47. On November 7, 2012, the respondents filed their opposition to the motion for stay and abeyance (ECF No. 51), in response to which Byford filed a reply (ECF No. 52).

A federal court may not grant habeas corpus relief on a claim not exhausted in state court. 28 U.S.C. § 2254(b). The exhaustion doctrine is based on the policy of federal-state comity, and is intended to allow state courts the initial opportunity to correct constitutional deprivations. *See Picard v. Conner*, 404 U.S. 270, 275 (1971). To exhaust a claim, a petitioner must fairly present the claim to the highest state court, and must give that court the opportunity to address and resolve it.

---

[1] Byford represented to the court that the necessary arrangements had been made to conduct the neuropsychological evaluation, thereby rendering unnecessary this court's intervention.

*See Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam); *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992).

Byford concedes that his second amended petition in this action (ECF No. 46) is a "mixed petition," meaning it contains both exhausted and unexhausted claims. ECF No. 31, p. 3. If his petition is simply dismissed without prejudice for failure to exhaust, he may face limitations issues when he later attempts to file a new federal petition after completing the exhaustion of his claims in state court. *See* 28 U.S.C. § 2244(d) (statute of limitations); *Duncan v. Walker*, 533 U.S. 167 (2001) (pendency of federal habeas petition does not toll limitations period); *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005) (regarding "protective petitions"). In addition, Byford notes that the Supreme Court's decision in *Pinholster v. Cullen*, 131 S.Ct. 1388 (2011) will not permit this court to consider any evidence that was not presented to the state courts first. Thus, he requests that this action be stayed while he completes exhaustion of his claims in state court.

In *Rhines v. Weber*, 544 U.S. 269 (2005), the Supreme Court circumscribed the discretion of federal district courts to impose stays to facilitate habeas petitioners' exhaustion of claims in state court. The *Rhines* Court stated:

> . . . [S]tay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless. *Cf.* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").
>
> * * *
>
> [I]t likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. In such circumstances, the district court should stay, rather than dismiss, the mixed petition.

*Rhines*, 544 U.S. at 277-78.

*Rhines* does not state, or suggest, that every unexhausted claim in the petition must satisfy, individually, the "good cause" and "potentially meritorious" requirements before a stay is permitted. Indeed, the rationale for permitting a stay would apply with more force to a petition in which only one of the unexhausted claims meets the *Rhines* requirements, but is likely meritorious, than it would to a petition in which all the unexhausted claims meet the *Rhines* requirements, but none are more than potentially meritorious. If a stay is warranted with respect to any single claim, the court need not conduct a claim-by-claim exhaustion analysis regarding the remaining claims.

Byford identifies Claims One and Eleven of his petition as two claims for which stay and abeyance are appropriate. In Claim Eleven, he alleges that his death sentence is in violation of the constitution because his trial counsel failed to conduct an adequate investigation into potential mitigating evidence and failed to present available mitigating evidence in the penalty phase of his trial. ECF No. 46, p. 125-139. More specifically, he contends that, in his retrial after his conviction was overturned by the Nevada Supreme Court, his counsel failed to present significant mitigation evidence that had been presented at his initial trial. Such evidence included testimony from a drug and alcohol counselor about Byford being raised in an alcoholic family and Byford's own drug and alcohol abuse, which began in childhood. Byford further claims that counsel was ineffective in failing to request a comprehensive neurological assessment, which would have revealed significant cognitive impairment, and in failing to speak to Byford and his family members, which would have yielded information about how addiction and abuse impacted his life. According to Byford, if counsel properly developed and presented available mitigation evidence to the jury, he would have likely received a sentence less harsh than the death penalty that was imposed.

In Claim One, he alleges that his conviction and death sentence are in violation of the constitution because his trial counsel failed to adequately investigate and litigate various issues related to the guilt phase of his trial. ECF No. 46, p. 22-66. Among the allegations in support of this claim are that the testimony of the State's key witness, Todd Smith, was false and the that the ballistics evidence presented by the State to establish Byford as the shooter of the victim was faulty.

1 The claim also contains allegations that counsel failed to adequately impeach other witnesses who
2 supported Smith's testimony.  And, here again, Byford contends that trial counsel's deficient
3 performance likely impacted the outcome of his trial.

4       In his motion for stay, Byford asserts that his counsel in his first state-court habeas action,
5 Jonell Thomas, was also ineffective in not presenting in that proceeding the allegations and
6 information he now sets forth in Claims One and Eleven.  Specifically, Byford argues, citing to a
7 declaration provided by Ms. Thomas (ECF No. 33-2, p. 1-3):

> . . . After reviewing Mr. Byford's current petition before this Court, Ms. Thomas acknowledged that, during Mr. Byford's state post-conviction proceedings, she failed to investigate and present any evidence concerning his brain damage and horrific childhood. [Thomas declaration] at 1.  She also failed to investigate the witnesses, testimony, and forensic evidence presented during Mr. Byford's guilt trial, and failed to consult experts in order to determine the accuracy of the state's theory of the case; had she done so, a colorable claim of innocence would have been preserved.
>
> Ms. Thomas' deficient performance sprang from her incorrect interpretation of Nevada law - that meaningful factual development could not occur in state postconviction until an evidentiary hearing had been granted by the district court.  Id. at 1. . . . Ms. Thomas erroneously believed that the state court did not have the authority to provide funds for experts or investigation until an evidentiary hearing had been granted. [Thomas declaration] at 1. . . .  Now acknowledging that her interpretation of NRS 34.780(2) was incorrect, Ms. Thomas admits that she should have asked for the funds to factually develop Mr. Byford's case. [Thomas declaration] at 1-2.  Ms. Thomas further acknowledges that effective counsel would have requested funds to hire experts who could explain the significance of the facts discovered during a proper investigation. Id. at 2.  Because of Ms. Thomas' deficient performance, Mr. Byford was denied his constitutional right to obtain an adjudication on the merits of his potentially meritorious ineffective assistance of trial counsel claims.  See Martinez, 132 S. Ct. at 1317.
>
> Every claim raised in Mr. Byford's initial-review collateral petition was record based.  Ms. Thomas failed to perform such basic tasks as gathering school, medical and prison records, or police reports. . . .  In fact, Ms. Thomas' work consisted of little more than reviewing the file:  she did not interview any potential witnesses. [Thomas declaration.]  Ms. Thomas did not speak to any members of Mr. Byford's family to develop a mitigation presentation, nor did she retain an investigator to do so.  Id.  With no knowledge of Mr. Byford's history and upbringing, Ms. Thomas could not, and, indeed, did not present much of the mitigation that is now presented in Claim [Eleven] of his petition. . . .

25 ECF No. 31, p. 8-10 (footnotes and internal citations omitted).
26       Byford argues that this alleged ineffectiveness of his counsel in his first state-court habeas

1  action constitutes good cause for his failure to exhaust the claims that are Claim One and Claim
2  Eleven of his second amended petition.  As legal support for this argument, Byford points to the
3  Supreme Court's recent decision in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012).  In *Martinez*, the
4  Supreme Court held, for the first time, that "[w]here, under state law, claims of ineffective assistance
5  of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not
6  bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the
7  initial-review collateral proceeding, there was no counsel or counsel in that proceeding was
8  ineffective."  *Martinez*, 132 S.Ct. at 1320.  While the *Martinez* decision did not deal directly with the
9  issue of good cause for a failure to exhaust, its holding, with respect to the issue of good cause for a
10 procedural default, concerns a similar issue, and is analogous and instructive.
11       The *Rhines* opinion does not go into detail as to what constitutes good cause for failure to
12 exhaust, and the Ninth Circuit has provided no clear guidance on that question, beyond holding that
13 the test is less stringent than an "extraordinary circumstances" standard.  *See Jackson v. Roe*, 425
14 F.3d 654, 661-62 (9th Cir. 2005) (citing *NLRB v. Zeno Table Co.*, 610 F.2d 567, 569 (9th Cir.
15 1979)).  Many district courts have concluded that the standard is more generous than the good-cause
16 showing needed to excuse a procedural default.  *See*, *e.g.*, *Rhines v. Weber*, 408 F.Supp.2d 844, 849
17 (D.S.D. 2005) (applying the Supreme Court's mandate on remand).  This view finds support in the
18 Supreme Court's opinion in *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), where the Court
19 acknowledged that a petitioner's "reasonable confusion" about the timeliness of his federal petition
20 would generally constitute good cause for his failure to exhaust state remedies before filing his
21 federal petition.  *Pace*, 544 U.S. at 416-17.  In light of this caselaw, and especially in light of the
22 recent Supreme Court decision in *Martinez*, the court concludes that ineffective assistance of
23 counsel in initial-review collateral proceedings, in failing to raise a substantial claim of ineffective
24 assistance at trial, may establish cause for the failure to exhaust that claim.
25       Applying this conclusion in this case, the court notes, first, that, in Nevada, a claim of
26 ineffective assistance of trial counsel generally must be made, in the first instance, in a first state

habeas action. *See Corbin v. State*, 111 Nev. 378, 381, 892 P.2d 580, 582 (1995) ("[T]his court has consistently concluded that it will not entertain claims of ineffective assistance of counsel on direct appeal."). Further, the court agrees with Byford that, in light of *Martinez*, and the other case law cited above, he has shown good cause, under *Rhines*, for his failure to exhaust the "substantial"[2] ineffective assistance of counsel claims that he sets forth as Claim One and Claim Eleven of his second amended petition. Those claims are at least potentially meritorious. Moreover, there is no indication that Byford has ever engaged in intentionally dilatory litigation tactics. Therefore, the requirements for a stay of this action pending exhaustion of Byford's claims in state court, as set forth in *Rhines*, are satisfied.

The court will grant Byford's motion for stay and abeyance, and stay this action. In exercising its discretion to grant the stay, the court takes into account the effect of *Crump v. Warden*, 113 Nev. 292, 934 P.2d 247 (1997), under which, it appears, there is at least a possibility that the Nevada courts may consider, on their merits, Byford's unexhausted claims, including the claims set forth as Claim One and Claim Eleven of his second amended petition. The court's intention is that this will be the last time that the court imposes a stay to facilitate Byford's exhaustion of claims in state court. Byford must exhaust all of his unexhausted claims in state court during the stay imposed pursuant to this order.

**IT IS THEREFORE ORDERED** that petitioner's Motion for Stay and Abeyance (ECF No. 31) is GRANTED. This action is STAYED to allow petitioner to exhaust, in state court, all his unexhausted claims for habeas corpus relief.

**IT IS FURTHER ORDERED** that, on or before June 15, 2013, petitioner shall file and serve a status report, describing the status of his state-court proceedings. Thereafter, during the stay of this action, petitioner shall file such a status report every 6 months (on or before December 15, 2013; June 15, 2014; etc.). Respondents may, if necessary, file and serve a response to any such

---

[2] Under *Martinez*, the underlying ineffective assistance of trial counsel claim is "substantial" if it has "some merit." 132 S. Ct. at 1318. While reserving judgment as to whether the claims at issue provide a viable basis for habeas relief, the court concludes that they meet this lower threshold.

status report within 15 days after its service. If necessary, petitioner may reply within 15 days of service of the response.

**IT IS FURTHER ORDERED** that, following the conclusion of petitioner's state court proceedings, petitioner shall, within 30 days, make a motion to lift the stay.

**IT IS FURTHER ORDERED** that this action shall be subject to dismissal upon a motion by respondents if petitioner does not comply with the time limits in this order, or if he otherwise fails to proceed with diligence during the stay imposed pursuant to this order.

DATED: February 1, 2013.

_____
UNITED STATES DISTRICT JUDGE