UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

ROBERT ROYCE BYFORD,

     Petitioner,

v.

WILLIAM GITTERE, *et al.*,

     Respondents.

Case No. 3:11-cv-00112-JCM-WGC

ORDER

I.     SUMMARY

     This action is a petition for writ of habeas corpus by Robert Royce Byford, a Nevada prisoner sentenced to death. The case is before the Court with respect to a motion to dismiss filed by the respondents and a related motion for leave to conduct discovery and motion for evidentiary hearing filed by Byford. In the motion to dismiss, Respondents assert that certain claims in Byford's third amended habeas petition are barred by the statute of limitations, unexhausted, procedurally defaulted, and unripe. The Court will grant the motion to dismiss in part and deny it in part. The Court will dismiss certain of Byford's claims as barred by the statute of limitations. The Court will deny the motion to dismiss, without prejudice, to the extent it is made on grounds of exhaustion, procedural default, and ripeness. The Court will deny Byford's motion for leave to conduct discovery and his motion for evidentiary hearing, without prejudice to Byford making new such motions in conjunction with the briefing of the merits of his remaining claims, as contemplated in the scheduling order in this action. The Court will set a schedule for the respondents to file an answer.

II.     BACKGROUND

Byford was convicted in 1998, in Nevada's Eighth Judicial District Court (Clark County), of first-degree murder with use of deadly weapon, and he was sentenced to death. *See* Amended Judgment of Conviction, Exh. 2 (ECF No. 1-3, pp. 5–6). In its opinion on Byford's direct appeal, the Nevada Supreme Court described the background of the case as follows:

> In 1992, the State charged appellant Robert Royce Byford and two codefendants, Christopher Garth Williams and Todd Smith, with the murder of Monica Wilkins. Smith later pleaded guilty to one count of accessory to murder and agreed to testify against Byford and Williams. In 1994, Byford and Williams were found guilty by a jury and sentenced to death, but this court reversed their convictions and remanded for retrial due to violation of their Fifth Amendment right to remain silent. *Murray v. State*, 113 Nev. 11, 930 P.2d 121 (1997).

> After retrial, Byford and Williams were again convicted. Byford received a death sentence, and Williams a term of life in prison without the possibility of parole.

> *     *     *

> Byford's second trial began in February 1998, at which time the following evidence was adduced.

> Byford, Williams, and two teenage girls were visiting Smith at his parents' residence in Las Vegas on March 8, 1991. Byford was twenty years old, Williams seventeen, and Smith nineteen. Monica Wilkins, who was eighteen, called and told Smith she would pay him for a ride home from a local casino. Smith drove his jeep to pick Wilkins up, accompanied by Williams and one of the girls. After Smith picked up Wilkins and her friend, Jennifer Green, he asked Wilkins for gas money. Wilkins had Smith stop at a Burger King so that she could get some money. Williams went inside the store to see what was taking her so long, and Wilkins told him that she had gotten another ride. Smith and Williams were upset with Wilkins, and after they drove away, Williams fired a handgun out the window of the jeep.

> Smith testified that Wilkins had angered him, Williams, and Byford before because she had invited them to her apartment to party but then left with other men. Byford and Williams had talked about "get[ting] rid of her" because she was always "playing games with our heads." Smith participated in the talk but took the threats as jokes.

> Later that night, Smith, Williams, and Byford were together at Smith's house when Wilkins called again for a ride home. Accompanied by Byford and Williams, Smith drove to pick her up. Smith then drove all four of them to the desert outside of town to find a party that Byford heard was taking place. Wilkins told the other three that she had taken LSD earlier and was hallucinating. Smith drove to the usual area for parties, but they

found no party. They then stopped so that everyone could urinate. Wilkins walked up a ravine to do so.

Smith testified to the following. As Wilkins finished, Byford handed Williams a handgun and said he "couldn't do it." Smith asked Byford what he was doing with the gun, and Byford told Smith to "stay out of it." Williams then shot Wilkins in the back three to five times. She screamed and fell to the ground. Wilkins got up, walked to Williams, and asked him why he had shot her. He told her that he had only shot around her. Wilkins walked up out of the ravine but then felt the back of her neck, saw that she was bleeding, and again confronted Williams. Williams told her that he shot her because she was "a bitch." He then walked behind her and shot her again repeatedly. Wilkins screamed and fell to the ground again. Byford then took the gun from Williams, said that he would "make sure the bitch is dead," and fired two shots into her head. Byford then got a can of gasoline from the jeep and poured it on Wilkins. Byford tried to hand a lighter to Smith and get him to light the gasoline, but Smith refused. Byford called him a "wussie" and lit the body. As it burned, the three drove off. As they returned to Las Vegas, Byford pointed the handgun at Smith and threatened to kill him if he ever told anyone.

Smith further testified that about a week after the murder, Byford and Williams had him drive them back to the desert to bury the body. An inmate who was incarcerated in jail with Byford and Williams after their arrest also testified that the two told him about this trip back to the body. They told the inmate that the body was decomposing and had maggots on it. Byford and Williams rolled the corpse into the ravine and partly covered it with a few shovelfuls of dirt.

After about two more weeks, the body was discovered by target shooters. Las Vegas Metropolitan Police Department investigators collected sixteen .25 caliber shell casings at the site; ballistic testing showed that all were fired from the same weapon. Ten .25 caliber bullets were recovered; five were in the body. Three bullets were in the chest and abdomen, and two were in the head. Either of the bullets in the head would have been fatal. The body was partly eaten by coyotes or wild dogs. Other bullets could have been lost from the body due to this eating or the burning and decomposition of the body. The burning appeared to be postmortem.

In mid-April 1991, Byford's friend, Billy Simpson, was visiting Byford's residence. When the two came upon a dead rabbit covered with maggots, Byford told Simpson that he had seen maggots on a human body before. That same night, Simpson and his brother Chad observed Byford and Williams engage in "play acting" in which Williams acted as if he shot Byford with a gun, Byford fell and then stood back up, and Williams opened his eyes wide and pretended to reload and shoot him again. Byford and Williams explained that they had shot and killed Wilkins in the desert and then burned her body.

In the spring or summer of 1991, Byford conversed with two girls in a city park. He admitted to them that he and Williams had shot and killed a girl in the desert and then burned her body. He told them that he wanted to see what would happen when someone under the influence of "acid" was shot. In August 1991, Byford told another friend that he was a "bad

person" and "had done evil things" because he had shot and killed someone in order to know what it felt like to kill someone.

After the police investigation led to Byford and Williams, Byford asked his girlfriend to provide an alibi for him by telling the police that on the night of the murder they had been on the phone all night.

Neither Byford nor Williams testified. However, Williams introduced, over Byford's objection, Byford's testimony from the first trial. The gist of that prior testimony was that Smith and Wilkins were boyfriend and girlfriend, that they argued that night, that Smith shot Wilkins, and that Byford and Williams only aided Smith in concealing the crime. The testimony also included Byford's admission that he had a prior felony conviction for attempted possession of a stolen vehicle. In closing argument, the prosecutor referred to Byford as a convicted felon.

The jury found Byford and Williams guilty of first-degree murder with the use of a deadly weapon.

At the penalty hearing, the State called Marian Wilkins, the mother of the victim, to testify on the impact of losing her daughter. A probation officer testified that Byford had violated his probation conditions in 1991 and been placed under house arrest. Byford violated house arrest in 1992 by removing his transmitter bracelet and absconding. The officer also described Byford's juvenile record, which included burglary in 1984 and carrying a concealed weapon in 1987. A detention officer testified that in 1994 Byford was disciplined for fighting with another inmate at the Clark County Detention Center; the officer considered Byford to be a behavioral problem for the Center.

Two of Byford's aunts testified to Byford's good character growing up, as did his sister. Byford's mother also testified on his behalf and described him as a good boy and a caring son. Byford and his father had often got in conflicts, and his father was "heavy-handed" in disciplining him. Byford was very close to his grandfather. When his grandfather died, he became angry and withdrawn and quit attending church. Byford's mother was raising Byford's son. Byford talked with his son on the phone and was a good influence on him.

Thomas Kinsora, a Ph.D. in clinical neuropsychology, testified for Byford. Byford was diagnosed with attention deficit disorder as a child. He had conflicts with and anger toward his father for the latter's abuse of alcohol and emotional distance. Byford lost interest in school and immersed himself in alcohol and marijuana after his grandfather's death. He later used methamphetamines heavily for a time. After testing Byford, Dr. Kinsora concluded that the results were largely unremarkable and that Byford was not psychopathic.

Byford spoke briefly in allocution and said that he was sorry for his part in Wilkins's death.

In Byford's case, jurors found one mitigating circumstance: possible substance abuse. The jury found two aggravating circumstances: the murder was committed by a person under sentence of imprisonment and involved torture or mutilation of the victim. Byford received a sentence of death.

*Byford v. State*, 116 Nev. 215, 220–24, 994 P.2d 700, 704–07 (2000) (a copy of the Nevada Supreme Court's opinion is found in the record at ECF No. 1-3, pp. 157–99).

Byford appealed, and on February 28, 2000, the Nevada Supreme Court affirmed his conviction and sentence. *See* Appellant's Opening Brief, Exh. 3 (ECF No. 1-3, pp. 8–116); Appellant's Reply Brief, Exh. 4 (ECF No. 1-3, pp. 118–55); *Byford*, 116 Nev. 215, 994 P.2d 700 (2000). Byford then sought a writ of certiorari from the United States Supreme Court, and the Court denied his petition on November 27, 2000. *Byford v. Nevada*, 531 U.S. 1016 (2000).

Byford filed a petition for writ of habeas corpus in the state district court on December 1, 2000. *See* Petition for Writ of Habeas Corpus, Exh. 2 (ECF No. 108-2). The court appointed counsel for Byford, and, with counsel, Byford filed a supplement to his petition. *See* Supplemental Petition, Exhs. 3, 4 (ECF Nos. 108-3, 108-4). Without holding an evidentiary hearing, the court denied all of Byford's ineffective assistance of counsel claims and dismissed his other claims on state-law procedural grounds. *See* Findings of Fact, Conclusions of Law and Order, Exh. 10 (ECF No. 108-10).

Byford appealed, and the Nevada Supreme Court vacated the judgment in part and remanded with respect to the ineffective assistance of counsel claims, because the district court did not provide adequate findings of fact and conclusions of law regarding those claims. *See* Appellant's Opening Brief, Exh. 6 (ECF Nos. 1-4, 1-5); Appellant's Reply Brief, Exh. 7 (ECF No. 1-6, pp. 2–45); Order Affirming in Part, Vacating in Part, and Remanding, Exh. 8 (ECF No. 1-6, pp. 47–50). The Nevada Supreme Court affirmed the judgment with respect to the dismissal of Byford's other claims. *See* Order Affirming in Part, Vacating in Part, and Remanding, Exh. 8 (ECF No. 1-6, pp. 47–50).

On remand, without holding an evidentiary hearing, the district court issued an order again denying Byford's ineffective assistance of counsel claims. *See* Findings of Fact, Conclusions of Law and Order, Exh. 13 (ECF No. 108-13). Byford appealed, and the Nevada Supreme Court again vacated the judgment and remanded. *Byford v. State*,

123 Nev. 67, 156 P.3d 691 (2007) (a copy of the Nevada Supreme Court's opinion is found in the record at ECF No. 1-9, pp. 8–13).

On the second remand, the district court held an evidentiary hearing. Transcripts of Evidentiary Hearing, Exhs. 19, 20 (ECF Nos. 108-19, 108-20).  The district court then entered an order again denying Byford's ineffective assistance of counsel claims. *See* Amended Findings of Fact, Conclusions of Law and Order, Exh. 23 (ECF No. 108-23). Byford appealed, and the Nevada Supreme Court affirmed on September 22, 2010. *See* Appellant's Opening Brief, Exh. 13 (ECF No. 1-10); Appellant's Supplemental Opening Brief, Exh. 14 (ECF No. 1-11, pp. 2–24); Appellant's Reply Brief, Exh. 15 (ECF No. 1-11, pp. 26–94); Appellant's Supplemental Reply Brief, Exh. 16 (ECF No. 1-12, pp. 2–19); *Byford v. State*, 126 Nev. 697, 367 P.3d 754 (2010) (unpublished) (a copy of the Nevada Supreme Court's order is found in the record at ECF No. 1-12, pp. 21–55). The Nevada Supreme Court's remittitur issued on January 31, 2011. *See* Docket Entries, Exh. 24, p. 5 (ECF No. 108-24, p. 6).

Byford then initiated this federal habeas corpus action by filing a *pro se* petition for writ of habeas corpus on February 15, 2011. ECF No. 1. After counsel was appointed (ECF No. 4), Byford filed a first amended habeas petition on January 3, 2012. ECF No. 17. He filed a second amended habeas petition on September 4, 2012. ECF No. 46. On February 1, 2013, this action was stayed to allow Byford to further exhaust claims in state court. ECF No. 53.

Byford initiated a second state habeas action on January 31, 2012; his petition in that action essentially mirrored his second amended petition in this case. *See* Amended Petition for Writ of Habeas Corpus, Exh. 28 (ECF Nos. 108-28, pp. 2–200). The state district court dismissed the petition on state-law procedural grounds. *See* Findings of Fact, Conclusions of Law and Order, Exh. 33 (ECF No. 109-5). Byford appealed and the Nevada Supreme Court affirmed on September 22, 2016. *See* Order of Affirmance, Exh. 38 (ECF No. 109-10).

On January 11, 2017, Byford initiated a third state habeas action, asserting a claim based on *Hurst v. Florida*, 577 U.S. 92 (2016). *See* Petition for Writ of Habeas Corpus, Exh. 39 (ECF No. 109-11). The state district court dismissed Byford's third state habeas action on state-law procedural grounds. *See* Findings of Fact, Conclusions of Law and Order, Exh. 44 (ECF No. 109-16). Byford appealed and the Nevada Supreme Court affirmed on September 13, 2019. *See* Order of Affirmance, Exh. 49 (ECF No. 109-21).

Meanwhile, in this case, on March 13, 2017, the Court temporarily lifted the stay and granted Byford leave to amend his petition to assert his claim based on *Hurst*. ECF Nos. 67, 68, 73. On October 24, 2019, after completion of Byford's third state habeas action, this Court lifted the stay in this case. ECF No. 88.

Byford then filed his third amended petition—now his operative habeas petition—on January 30, 2020. ECF No. 92. Byford's third amended petition includes the following claims of violations of his federal constitutional rights (characterized and organized here as in Byford's third amended petition):

Claim 1.    Trial counsel was ineffective during the guilt phase.

      A.    Trial counsel failed to engage a firearms expert or crime scene reconstructionist.

      B.    Trial counsel failed to retain a medical expert or pathologist and failed to impeach Dr. Sheldon Green's testimony at trial with his previous testimony from the September 10, 1992, preliminary hearing.

      C.    Trial counsel failed to introduce Williams's prior testimony.

      D.    Trial counsel failed to impeach the testimony of Chief Deputy District Attorney David Schwartz.

      E.    Trial counsel failed to object to the testimony of Detective Scholl.

      F.    Trial counsel failed to object to Deputy District Attorney Kephart becoming a witness in the case.

      G.    Trial counsel failed to investigate Wayne Porretti.

      H.    Trial counsel failed to impeach Todd Smith with available evidence.

I.     Trial counsel failed to introduce prior inconsistent statements of Todd Smith, Chad Simpson, and Billy Simpson as substantive evidence.

J.     Trial counsel failed to introduce prior inconsistent statements of Billy Simpson as substantive evidence.

K.     Trial counsel failed to introduce inconsistent statements of Chad Simpson as substantive evidence.

L.     Trial counsel failed to introduce inconsistent statements of Todd Smith as substantive evidence.

M.     Trial counsel failed to interview Loralee Silvey and present her testimony.

N.     Trial counsel failed to request jury instructions on voluntary intoxication.

O.     Trial counsel failed to object to victim impact testimony presented in the guilt phase of the trial.

P.     Trial counsel failed to challenge potential jurors for implied bias.

Q.     Trial counsel failed to object to the trial court's biased questioning for rehabilitation of prospective jurors.

R.     Trial counsel failed to object to prosecutorial misconduct.

S.     Trial counsel failed to object to inaccurate or incomplete jury instructions.

T.     Trial counsel failed to adequately prepare or advise Byford regarding testifying at the 1994 trial.

U.     Trial counsel failed to advise Byford of Williams's December 10, 1992, voluntary statement to the police.

V.     Trial counsel failed to object to equal consideration of death penalty as qualification.

W.     Trial counsel failed to ensure that all proceedings were recorded.

X.     Trial counsel failed to object to Byford's absence from proceedings.

Y.     Trial counsel failed to object to popularly elected judges presiding over the trial and appellate proceedings.

Z.     Byford was prejudiced by the cumulative effect of the failures of his trial counsel alleged in Claim 1.

Claim 2.     The prosecution failed to disclose material exculpatory evidence regarding, and failed to correct false testimony of, Wayne Porretti.

    A.     Porretti had an extensive criminal background, a history of favorable plea deals, and he explicitly asked for a deal in this case.

    B.     Porretti had documented mental health issues.

    C.     The prosecution failed to correct Porretti's false or misleading testimony.

    D.     The prosecution failed to disclose all impeachment materials regarding Porretti.

    E.     The State's history of such violations in other cases suggests the violations in this case were willful.

Claim 3.     The trial court allowed a deputy district attorney to vouch for the testimony of Smith by testifying about why Smith was given a plea deal.

Claim 4.     The prosecution committed misconduct.

    A.     Prosecutor William Kephart has a history of misconduct.

    B.     Byford's conviction after his first trial was reversed due to Kephart's misconduct.

    C.     The prosecution committed misconduct in the guilt phase of the trial.

        1.     The prosecution made misleading statements during their opening statements.

        2.     The prosecution made misleading statements during their closing arguments.

        3.     The prosecution made improper references to prior criminal activity on the part of Byford.

        4.     The prosecution improperly implied that Byford carried a burden of proof.

        5.     The prosecution made degrading comments about defense counsel and improperly vouched for government witnesses.

        6.     The prosecution made disparaging comments about defense counsel and mischaracterized the defense's argument.

        7.     The prosecution made misleading argument.

        8.     Additional guilt phase prosecutorial misconduct.

D.   The prosecution committed misconduct in the penalty phase of the trial.

1.   The prosecution improperly appealed to the passions and prejudices of the jury.

2.   The prosecution improperly argued that the jury should impose the death penalty for its deterrent effect.

3.   The prosecution made improper arguments regarding mercy and facts not in evidence.

4.   The prosecution improperly compared the rights of the victim to the rights of Byford.

5.   The prosecution made false argument concerning narrowing of aggravating circumstances.

6.   The prosecution made improper assertions of prosecutorial expertise and improperly shifted blame for imposition of the death penalty.

7.   The prosecution improperly offered personal opinion.

8.   The prosecution improperly offered personal opinion degrading to Byford's family.

9.   The prosecution made improper arguments regarding threats of harm to jurors.

10.  The prosecution made argument misstating the law concerning the aggravating circumstance of torture.

11.  The prosecution made improper arguments regarding moral outrage.

12.  The prosecution made improper arguments regarding good quality of life in prison and facts not in evidence.

13.  The prosecution made erroneous arguments concerning mercy and mitigating circumstances.

14.  The prosecution made erroneous arguments regarding lesser sentences.

15.  The prosecution made misleading argument conflating Byford with co-defendant Williams.

16.  The prosecution made improper argument regarding future dangerousness.

E.   Byford was prejudiced by the cumulative effect of the prosecutorial misconduct alleged in Claim 4.

Claim 5.    The trial court gave the jurors erroneous instructions in the guilt phase of the trial.

    A.    The jurors received erroneous instructions on aiding and abetting.

    B.    The jurors received an erroneous instruction on premeditation and deliberation.

    C.    The jurors received an erroneous instruction on reasonable doubt.

    D.    The jurors received an erroneous instruction on implied malice.

    E.    The jurors received an erroneous instruction on equal and exact justice.

    F.    The jurors received an erroneous instruction on guilt or innocence of another person.

    G.    The jurors receive an incomplete accomplice instruction.

    H.    Byford was prejudiced by the cumulative effect of the erroneous instructions alleged in Claim 5.

Claim 6.    The trial court improperly admitted Byford's testimony from his first trial.

Claim 7.    The trial court refused to sever Byford's case from that of his co-defendant.

    A.    The failure to sever prejudiced Byford because it created a serious risk the jury would be unable to make a reliable judgment about Byford's guilt.

    B.    The jury instructions were insufficient to ensure the jury would properly consider and compartmentalize the evidence against each defendant.

Claim 8.    Byford's right to a speedy trial was violated.

Claim 9.    The torture or mutilation aggravating circumstance found by the jury was invalid.

    A.    Procedural background.

    B.    The mutilation aggravating circumstance is unconstitutionally vague and overbroad and does not narrow the application of the death penalty.

    C.    The torture theory is constitutionally invalid.

    D.    Imputing to Byford an aggravating circumstance applicable only to co-defendant Williams violated Byford's constitutional rights.

E.      The torture or mutilation factor is invalid due to the lack of unanimous finding as to either theory of the factor.

F.      Prejudice.

Claim 10.      The aggravating circumstance of "under sentence of imprisonment" is invalid as applied to Byford.

Claim 11.      Trial counsel was ineffective in the penalty phase.

A.      Penalty phase evidence presented.

B.      Trial counsel failed to adequately investigate, develop and prepare a case in mitigation.

C.      Trial counsel failed to adequately present mitigation evidence.

   1.      Trial counsel performed deficiently regarding utilization of Dr. Thomas Kinsora.

   2.      Trial counsel failed to present mitigating evidence regarding the ill effects of the drug and crime infested Las Vegas neighborhood environment in which Byford was raised.

   3.      Trial counsel failed to present mitigating evidence regarding Byford's dysfunctional, abusive home environment.

   4.      Trial counsel failed to present mitigating evidence regarding Byford's family history of substance abuse and addiction.

   5.      Trial counsel failed to present mitigating evidence regarding the deleterious effects of being a child of an alcoholic.

   6.      Trial counsel failed to adequately present mitigating evidence regarding Byford's own problems with substance abuse and addiction and its damaging effects on his development.

   7.      Trial counsel failed to adequately present mitigating evidence regarding Byford's intoxication on the night of the offense.

   8       Trial counsel failed to adequately present mitigating evidence of Byford's good character, and evidence that the offense was inconsistent with his character.

D.      Trial counsel failed to object to the aggravating circumstance of "under sentence of imprisonment."

E.    Trial counsel failed to object on all available grounds to the aggravating circumstance that the murder involved torture or mutilation of the victim.

F.    Trial counsel failed to object to the commutation instruction.

G.    Trial counsel failed to object to the jury instruction listing mitigating circumstances that the defense did not assert, and that were therefore irrelevant, and to the prosecution's argument addressing the irrelevant mitigating circumstances.

H.    Byford was prejudiced by the cumulative effect of the failures of his trial counsel alleged in Claim 11.

Claim 12.    The trial court erred in conducting jury voir dire.

A.    The trial court imposed a requirement of equal consideration of the death penalty.

B.    The trial court excused for cause a potential juror who could consider the death penalty, but who could not provide equal consideration to the death penalty.

C.    The trial court denied a challenge for cause against a juror.

D.    The trial court demonstrated a lack of impartiality in its rehabilitation of potential jurors during jury selection.

E.    Byford was prejudiced by the trial court's errors in conducting jury voir dire.

Claim 13.    The trial court refused to instruct the jury on all the mitigating circumstances asserted by the defense.

Claim 14.    The trial court permitted the prosecution to make misrepresentations to the jury and to argue improperly about statutorily delineated mitigating circumstances, some of which were irrelevant to the case and not proffered by the defense.

Claim 15.    The trial court admitted highly prejudicial and cumulative irrelevant evidence.

A.    The trial court admitted gruesome photographs into evidence.

B.    The trial court admitted into evidence maggots recovered from the body of the victim.

Claim 16.    The trial court failed to record bench conferences and meetings in chambers.

Claim 17.    Critical court proceedings were conducted without Byford present.

Claim 18.    One of the jurors did not meet the constitutional standard of impartiality.

Claim 19.    The trial court gave the jurors erroneous instructions in the penalty phase of the trial.

    A.    The jurors received an erroneous anti-sympathy instruction.

    B.    The jurors received an erroneous commutation instruction.

Claim 20.    The jury failed to find clearly applicable mitigating circumstances.

Claim 21.    Character evidence was improperly used in the weighing process for determining death-eligibility.

Claim 22.    The elected officials who adjudicated Byford's trial, appeal and state post-conviction petitions were biased.

    A.    Nevada Supreme Court justices and district court judges are popularly elected and thus face the possibility of removal if they make a controversial and unpopular decision.

Claim 23.    Appellate counsel was ineffective for not raising on Byford's direct appeal all the claims contained in Claims 3, 4B, 4C, 5A, 5C, 5E, 5F, 5G, 9, 10, 12, 14, 16, 17, 19B, 20, 22, 24, 25 and 26, and for not raising all the federal constitutional bases for the claims that were asserted on Byford's direct appeal.

Claim 24.    Execution by lethal injection is unconstitutional.

    A.    Nevada's lethal-injection protocol is unconstitutional.

        1.    Lethal injection is unconstitutional in all circumstances.

        2.    Lethal injection in Nevada is unconstitutional.

            a.    The use of a paralytic in the execution protocol is unconstitutional.

            b.    The use of Midazolam in the execution protocol is unconstitutional.

        3.    Byford's challenge to Nevada's lethal-injection scheme Is cognizable.

    B.    Nevada's death-penalty scheme does not genuinely narrow the class of persons eligible for the death penalty.

    C.    The death penalty is cruel and unusual.

    D.    It is unconstitutional to impose death on an individual under the age of twenty-one at the time of his crime.

        1.    The emerging medical and societal consensus.

    2.      Other courts and organizations recognize a consensus against executing those under twenty-one.

    3.      Byford should be categorically exempted from execution.

    4.      There is now a national consensus to abolish the death penalty.

    5.      Nevada's death-penalty scheme is unconstitutional because executive clemency is unavailable.

    E.      Execution in a manner that violates the constitution is prejudicial per se.

Claim 25.    The Nevada Supreme Court failed to conduct fair and adequate appellate review.

Claim 26.    The trial court's failure to give a jury instruction defining the standard of proof as beyond a reasonable doubt in the weighing stage of Byford's penalty hearing violated his federal constitutional rights.

Claim 27.    Byford was prejudiced by the cumulative effect of the errors alleged in his third amended habeas petition.

    A.      The Nevada Supreme Court found numerous errors occurred at Byford's trial and sentencing.

*Id.*

Respondents filed their motion to dismiss on September 25, 2020 (ECF No. 107). Byford filed an opposition (ECF No. 116), and Respondents filed a reply (ECF No. 129). With his opposition to the motion to dismiss, Byford filed a motion for leave to conduct discovery (ECF Nos. 117, 121) and a motion for evidentiary hearing (ECF No. 119). Those motions have been fully briefed as well (ECF Nos. 130, 131, 133, 134).

III.    DISCUSSION

    A.    Exhaustion and Procedural Default

A federal court will not grant a state prisoner's petition for a writ of habeas corpus unless the petitioner has exhausted his available state-court remedies. 28 U.S.C. § 2254(b); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This means that a petitioner must give the state courts a fair opportunity to act on each of his claims before he presents those claims in a federal habeas petition. *See O'Sullivan v. Boerckel*, 526 U.S.

838, 844 (1999). A claim remains unexhausted until the petitioner has given the highest available state court the opportunity to consider the claim through direct appeal or state collateral review proceedings. *See Casey v. Byford*, 386 F.3d 896, 916 (9th Cir. 2004); *Garrison v. McCarthey*, 653 F.2d 374, 376 (9th Cir. 1981).

A habeas petitioner must "present the state courts with the same claim he urges upon the federal court." *Picard v. Connor*, 404 U.S. 270, 276 (1971). To achieve exhaustion, the state court must be "alerted to the fact that the prisoner [is] asserting claims under the United States Constitution" and given the opportunity to correct alleged violations of the prisoner's federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *see Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999). 28 U.S.C. § 2254(b) "provides a simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court." *Jiminez v. Rice*, 276 F.3d 478, 481 (9th Cir. 2001) (quoting *Rose*, 455 U.S. at 520).

A claim is not exhausted unless the petitioner has presented to the state court the same operative facts and legal theory upon which his federal habeas claim is based. *See Bland v. California Dept. of Corrections*, 20 F.3d 1469, 1473 (9th Cir. 1994). The exhaustion requirement is not met when the petitioner presents to the federal court facts or evidence which place the claim in a significantly different posture than it was in the state courts, or where different facts are presented at the federal level to support the same theory. *See Nevius v. Sumner*, 852 F.2d 463, 470 (9th Cir. 1988). On the other hand, new allegations that do not "fundamentally alter the legal claim already considered by the state courts" will not render a claim unexhausted. *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986); *see also Chacon v. Wood*, 36 F.3d 1459, 1468 (9th Cir. 1994).

The Supreme Court has recognized that under certain circumstances it may be appropriate for a federal court to anticipate a state-law procedural bar of an unexhausted claim, and to treat such a claim as technically exhausted but subject to the procedural default doctrine. "An unexhausted claim will be procedurally defaulted, if

state procedural rules would now bar the petitioner from bringing the claim in state court." *Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir. 2014) (citing *Coleman v. Thompson*, 501 U.S. 722, 731 (1991)).

In light of the procedural history of this case, and, in particular, the Nevada Supreme Court's rulings in Byford's second and third state habeas actions, the Court determines that any claims not yet presented by Byford in state court would be ruled procedurally barred in state court if Byford were to return to state court to attempt to exhaust those claims. *See* Order of Affirmance, Exh. 38 (ECF No. 109-10) (Nevada Supreme Court ruling Byford's second state habeas action procedurally barred); Order of Affirmance, Exh. 49 (ECF No. 109-21) (Nevada Supreme Court ruling Byford's third state habeas action procedurally barred). Therefore, the anticipatory default doctrine applies to any claims not yet presented in state court, and the Court considers those claims to be technically exhausted but subject to the procedural default doctrine. *See Dickens*, 740 F.3d at 1317; *see also* Opposition to Motion to Dismiss (ECF No. 116), p. 24 n.17 ("[T]he State's position is apparently that, to the extent any of Byford's allegations are considered unexhausted claims, this Court should treat them as technically exhausted (because there is no longer any available means by which the state courts could review the merits of the claims) but procedurally defaulted. As such, the exhaustion doctrine is a non-issue."). The Court therefore determines that all the claims in Byford's third amended petition are either exhausted or technically exhausted but subject to the procedural default doctrine.

Turning to the procedural default doctrine, then, a federal court will not review a claim for habeas corpus relief if the decision of the state court denying the claim rested—or, in the case of a technically exhausted claim, would rest—on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991). The Court in *Coleman* stated the effect of a procedural default as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).

A state procedural bar is "independent" if the state court explicitly invokes the procedural rule as a separate basis for its decision. *McKenna v. McDaniel*, 65 F.3d 1483, 1488 (9th Cir. 1995). A state court's decision is not "independent" if the application of a state's default rule depends on a consideration of federal law. *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000). Also, if the state court's decision fails "to specify which claims were barred for which reasons," the Ninth Circuit has held that the ambiguity may serve to defeat the independence of the state procedural bar. *Valerio v. Crawford*, 306 F.3d 742, 775 (9th Cir. 2002); *Koerner v. Grigas*, 328 F.3d 1039, 1050 (9th Cir. 2003).

A state procedural rule is "adequate" if it is "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Calderon v. United States Dist. Court* (*Bean*), 96 F.3d 1126, 1129 (9th Cir. 1996) (citation and internal quotation marks omitted). A discretionary state procedural rule can serve as an adequate ground to bar federal habeas review because, even if discretionary, it can still be "firmly established" and "regularly followed." *Beard v. Kindler*, 558 U.S. 53, 60–61 (2009). Also, a rule is not automatically inadequate "upon a showing of seeming inconsistencies" given that a state court must be allowed discretion "to avoid the harsh results that sometimes attend consistent application of an unyielding rule." *Walker v. Martin*, 562 U.S. 307, 320 (2011).

In *Bennett v. Mueller*, 322 F.3d 573, 585–86 (9th Cir. 2003), the court of appeals established a burden-shifting test for analyzing adequacy. Under *Bennett*, the State carries the initial burden of adequately pleading "the existence of an independent and adequate state procedural ground as an affirmative defense." *Bennett*, 322 F.3d at 586. The burden then shifts to the petitioner "to place that defense in issue," which the

petitioner may do "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Id*. Assuming the petitioner has met his burden, "the ultimate burden" of proving the adequacy of the state bar rests with the State, which must demonstrate "that the state procedural rule has been regularly and consistently applied in habeas actions." *Id*.

The Ninth Circuit Court of Appeals has held Nev. Rev. Stat. § 34.810 (regarding successive petitions) to be inadequate to bar federal review in capital habeas cases. *See Valerio*, 306 F.3d at 778, *Petrocelli v. Angelone*, 248 F.3d 877, 888 (9th Cir. 2001), and *McKenna*, 65 F.3d at 1488–89. Byford's reference to these holdings places the adequacy of the bar in issue. The relevant dates in *McKenna* and *Petrocelli* were 1983 and 1985. *See McKenna*, 65 F.3d at 1487–88; *Petrocelli*, 248 F.3d at 886. The court in *Valerio* found that the bar was inadequate as of 1990. *Valerio*, 306 F.3d at 778. Respondents have "the burden of demonstrating that, since *Valerio*, state courts have begun to regularly and consistently apply § 34.810 to habeas cases." *Riley v. McDaniel*, 786 F.3d 719, 722 n.4 (9th Cir. 2015). *See also King v. LaMarque*, 464 F.3d 963, 967 (9th Cir. 2006). Respondents have not made such a showing; this Court determines that § 34.810 is inadequate as a procedural bar for purposes of this case.

On the other hand, the Ninth Circuit Court of Appeals has held Nev. Rev. Stat. §§ 34.726 (statute of limitations) and 34.800 (laches) to be adequate to support application of the procedural default doctrine. *See Williams v. Filson*, 908 F.3d 546, 579–80 (9th Cir. 2018); *Ybarra v. McDaniel*, 656 F.3d 984, 990 (9th Cir. 2011); *Valerio*, 306 F.3d at 778; *Loveland v. Hatcher*, 231 F.3d 640, 643 (9th Cir. 2000). *Moran v. McDaniel*, 80 F.3d 1261, 1268–70 (9th Cir. 1996). Byford does not place the adequacy of those rules at issue. This Court determines that Nev. Rev. Stat. §§ 34.726 and 34.800 are adequate to support application of the procedural default doctrine in this case.

To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. *Murray*, 477 U.S. at 488. For cause to exist, the external impediment must have prevented the petitioner from raising the claim. *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991). With respect to the prejudice prong, the petitioner bears "the burden of showing not merely that the errors [complained of] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989), citing *United States v. Frady*, 456 U.S. 152, 170 (1982).

In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court ruled that ineffective assistance of post-conviction counsel may serve as cause, to overcome the procedural default of a claim of ineffective assistance of trial counsel. In *Martinez*, the Supreme Court noted that it had previously held, in *Coleman*, that "an attorney's negligence in a postconviction proceeding does not establish cause" to excuse a procedural default. *Martinez*, 566 U.S. at 15. The *Martinez* Court, however, "qualif[ied] *Coleman* by recognizing a narrow exception: inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id*. at 9. The Court described "initial-review collateral proceedings" as "collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial." *Id*. at 8.

Beyond the question of the adequacy of NRS §§ 34.726, 34.800, and 34.810, the Court will not, in this order, address the remainder of the issues raised by the parties concerning alleged procedural default of Byford's claims. The question of prejudice regarding alleged procedural defaults in this case is intertwined with the question of the merits of the claims themselves, such that the remaining procedural default issues will be better addressed in conjunction with the merits, after Respondents file an answer and Byford a reply. The Court will deny Respondents' motion to dismiss, to the extent it

is made on procedural default grounds, without prejudice to Respondents asserting their procedural default defense in their answer.

The parties' further briefing regarding alleged procedural default of Byford's claims—in Respondents' answer, Byford's reply, and any response by Respondents to Byford's reply—should, as to each claim allegedly procedurally defaulted, explain if, when, and where that claim, or a similar or related claim, was asserted in state court, and explain whether the claim was ruled procedurally barred in state court, so as to result in the procedural default of the claim in this action. The briefing should also address any argument by Byford that he can overcome the procedural default. This analysis should be set forth separately, in a clear, understandable manner, for each claim allegedly procedurally defaulted. The parties' further briefing must also, of course, address the merits of each of Byford's remaining claims.

B.      Byford's Claim of Actual Innocence

In his opposition to the motion to dismiss, Byford argues that he can overcome the procedural default of any of his claims by a showing that he is actually innocent of first-degree murder and actually innocent with respect to imposition of the death penalty. *See* Opposition to Motion to Dismiss (ECF No. 116), pp. 21–23.

A petitioner can overcome the procedural default of a claim, or a statute of limitations bar of a claim, by showing that he is actually innocent. *See Schlup v. Delo*, 513 U.S. 298 (1995); *see also McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (application to limitations bar); *Sawyer v. Whitley*, 505 U.S. 333, 345 (1992) (actual innocence with respect to death penalty). To demonstrate actual innocence under *Schlup*, a petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. Taking into account all the evidence in the case, the petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *McQuiggin*, 569 U.S. at 399 (quoting *Schlup*, 513 U.S. at 327); *see also Schlup*, 513 U.S. at 329 ("a

petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt"); *House v. Bell*, 547 U.S. 518, 538 (2006) (regarding evidence to be considered). "Based on this total record, the court must make a 'probabilistic determination about what reasonable, properly instructed jurors would do.'" *House*, 547 U.S. at 538 (quoting *Schlup*, 513 U.S. at 329). "The Court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *Id.* Meeting this standard "raise[s] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial without the assurance that the trial was untainted by constitutional error," warranting "a review of the merits of the constitutional claims[.]" *Schlup*, 513 U.S. at 317.

Byford argues that the record does not support a finding, and the jury did not properly find, that he intended to kill Monica Wilkins or that he in fact killed her. *See* Opposition to Motion to Dismiss (ECF No. 116), pp. 22–23. These arguments are based on the trial record and do not involve alleged new evidence; as such, they do not satisfy the requirements of *Schlup* to overcome a procedural default or limitations bar.

The only allegedly new evidence that Byford presents in support of his actual innocence argument is a declaration of Todd Smith dated June 11, 2019. *See* Declaration of Todd Smith, Exh. 124 (ECF No. 93-28). The declaration includes representations about Smith's relationships with Byford, Williams and Wilkins; about Smith's view of the character of Byford, Williams and Wilkins; about the drug use of Byford, Williams, Wilkins and himself; and about events that took place before and after Wilkins' murder. *See id*. The portion of Smith's declaration that concerns the actual murder of Wilkins is as follows:

> 13.  Monica called later that night to ask us to pick her up from a 7-11. It was the idea of either, or both, Rob [Byford] and Chris [Williams] to drive out to Pabco Road that night to attend a bonfire party. I had no independent knowledge that a party was scheduled to take place that night, but I had attended bonfire parties at that location in the past. During

these parties the attendees all bring their own gas and wood to start individual fires, listen to music and party. The gasoline and wood in the car came from Chris and Rob. I don't know why the attorneys made a big deal about their presence at the scene of the incident, because no one went there with the intention to kill and burn anyone.

14.   At some point during the drive, everyone got out of the vehicle to urinate, including Monica. Monica went off to a different area nearby for privacy and crouched down to relieve herself. As soon as she stood back up Chris pulled out his gun and began firing at her back. Monica held the back of her head, turned around, and looked at the blood on her hand. Then she asked Chris why he shot her. Chris then yelled "Because you're a bitch and I hate you," before shooting at her several more times. Monica then collapsed and did not seem to be moving. I was completely stunned by what I witnessed and was backing up towards my car. This is when Chris pointed the gun at me and asked if I was trying to leave them out there. Chris then threatened to shoot me, as well, if I tried to leave. Rob then took the gun and said "we have to make sure she's dead" and fired a couple of shots at her head. I then did what Rob and Chris instructed me to do and took part in trying to cover up the crime, out of fear for my life. Rob pretty much directed the cover up efforts, but I do not recall the specific details.

*Id.* at 3–4.

Byford makes no showing that this declaration is new evidence within the meaning of *Schlup*. "New" evidence is "relevant evidence that was either excluded or unavailable at trial." *Schlup*, 513 U.S. at 327–28; *see also Chestang v. Sisto*, 522 F.App'x 389, 391 (9th Cir. 2013) (witness declaration was not sufficiently "new" to support claim of actual innocence because contents were within defendant's knowledge at time of trial and no explanation was given for not introducing it sooner).

Furthermore, this declaration is, on its face, self-serving and unreliable; Smith's declaration tends to deflect blame from himself and his friend, Byford, and assign blame to Williams.

Most importantly, though, the declaration does not show Byford to be actually innocent. Far from it. The declaration confirms that Smith heard Byford say "we have to make sure she's dead," and saw Byford shoot Wilkins twice in the head.

A *Schlup* gateway claim requires new reliable evidence of innocence. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."

*Schlup*, 513 U.S. at 324. "By enumerating the categories of evidence that could prove

innocence, the Supreme Court made clear that less reliable kinds of evidence cannot

support an actual innocence claim." *Lee v. Lampert*, 653 F.3d 929, 945–46 (9th Cir.

2011) (en banc) (Kozinski, J., concurring). "Because a *Schlup* claim involves evidence

the trial jury did not have before it, the inquiry requires the federal court to assess how

reasonable jurors would react to the overall, newly supplemented record." *House*, 547

U.S. at 538 (citing *Schlup*, 513 U.S. at 330). Smith's 2019 declaration is not new,

reliable evidence that, if presented at trial, would have raised a probability that no

reasonable juror would have voted to convict Byford of first-degree murder or to

sentence him to death.

### C.     Ripeness

Respondents argue in their motion to dismiss that one of Byford's claims is

unripe. *See* Motion to Dismiss (ECF No. 107), p. 26. The Court determines that this

issue, like the remaining procedural default issues, is intertwined with the question of

the merits of Byford's claims, such that it will be better addressed in conjunction with the

merits of the claims, after Respondents file and answer and Byford files a reply. The

Court will deny the motion to dismiss, to the extent made on ripeness grounds, without

prejudice to Respondents asserting that argument in their answer.

### D.     Statute of Limitations

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the

following statute of limitations, codified in 28 U.S.C. § 2244, applies to federal habeas

corpus petitions:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of --
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the

Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A-D).

The petitioner is entitled to statutory tolling of the limitations period while a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The AEDPA statute of limitations is also subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 649 (2010).

In this case, the one-year AEDPA statute of limitations period began to run when the United States Supreme Court denied Byford's petition for writ of certiorari on November 27, 2000. *See Byford*, 531 U.S. 1016 (2000); 28 U.S.C. §2244(d)(1)(A). The limitations period was tolled, under 28 U.S.C. § 2244(d)(2), from December 1, 2000, to January 31, 2011, while Byford's first state habeas action was pending. *See* Petition for Writ of Habeas Corpus, Exh. 2 (ECF No. 108-2); Docket Entries, Exh. 24, p. 5 (ECF No. 108-24, p. 6). Four days ran against the limitations period from November 27 to December 1, 2000, and the remaining 361 days of the limitations period began running on January 31, 2011, and ran out on January 27, 2012.

Byford's second and third state habeas actions were both initiated after the expiration of the limitations period and had no statutory tolling effect. *See Jiminez*, 276 F.3d at 482.

Byford's original petition in this action, filed February 15, 2011 (ECF No. 1), and his first amended petition, filed January 3, 2012 (ECF No. 17) were timely filed under the statute of limitations, but his second amended petition, filed September 4, 2012 (ECF No. 46), and his third amended petition, filed January 30, 2020 (ECF No. 92),

were filed well after the expiration of the limitations period. This is undisputed. *See* Motion to Dismiss (ECF No. 107), pp. 4–5; Opposition to Motion to Dismiss (ECF No. 116), pp. 5–6; *see also Duncan v. Walker*, 533 U.S. 167, 181–82 (2001) (pendency of federal habeas corpus action does not toll AEDPA limitations period). Therefore, for the most part, the timeliness of Byford's claims turns upon whether the claims in his third amended petition relate back to the filing of either his original petition or his first amended petition (the exceptions, regarding Claims 24D(1)–(4) and 26, are discussed below). This, too, is undisputed. *See* Motion to Dismiss (ECF No. 107), p. 5 ("Byford may … avoid dismissal under the statute of limitations if he can carry his burden of establishing … that some of his claims relate back to one of his prior timely filed petitions."); Opposition to Motion to Dismiss (ECF No. 116), pp. 5–9; Reply in Support of Motion to Dismiss (ECF No. 129), p. 2 ("…Byford can overcome the timeliness defense in one of three ways: … (3) showing that his claims relate beck to a prior timely filed petition.").

In *Mayle v. Felix*, 545 U.S. 644 (2005), the Supreme Court held that "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order," but "[a]n amended habeas petition ... does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle*, 545 U.S. at 650, 664.

In *Ross v. Williams*, 950 F.3d 1160 (9th Cir. 2020) (en banc), the Ninth Circuit Court of Appeals held: "If a petitioner attempts to set out habeas claims by identifying specific grounds for relief in an original petition and attaching a court decision that provides greater detail about the facts supporting those claims, that petition can support an amended petition's relation back." *Ross*, 950 F.3d at 1167 (citing *Dye v. Hofbauer*, 546 U.S. 1 (2005) (per curiam) and Fed. R. Civ. P. 10(c) and 15(c)(1)). The *Ross* court stated further: "If an exhibit to the original petition includes facts unrelated to the

grounds for relief asserted in that petition, those facts were not 'attempted to be set out' in that petition and cannot form a basis for relation back." *Id*. at 1168.

Determining "whether an amended petition relates back to an original petition that relied on an appended written instrument to help set forth the facts on which it based its claims" requires a two-step analysis. *Ross*, 950 F.3d at 1167. First, the court must "determine what claims the amended petition alleges and what core facts underlie those claims." *Id*. Second, "for each claim in the amended petition," the court must examine "the body of the original petition and its exhibits" to see whether the pleading set out or attempted to set out "a corresponding factual episode," or "whether the claim is instead supported by facts that differ in both time and type" from those in the original petition. *Id*. Relation back does not require that the "facts in the original and amended petitions be stated in the same level of detail." *Ross*, 950 F.3d at 1168.

The Court construes Byford's original petition liberally because he filed that pleading *pro se*. *See Ross*, 950 F.3d at 1173 n.19. The Court must "look to the contents of a *pro se* filing rather than its form." *Id*.

Byford's original petition, filed *pro se* (albeit apparently with some assistance from the Federal Public Defender's office), included one ground for relief, in which Byford stated:

> I allege that my state court conviction and death sentence are unconstitutional, in violation of my Fifth, Sixth, Eighth, and Fourteenth Amendments, for all of the reasons stated in my direct appeal and state post-conviction proceedings. See attached exhibits 1-17, which are incorporated herein by reference. All grounds for relief included in this petition have been raised to the Nevada Supreme Court.

Petition for Writ of Habeas Corpus (ECF No. 1), p. 3. The Court reads this as an attempt by Byford to assert in his original petition in this case all the claims that he asserted before the Nevada Supreme Court on his direct appeal and on the appeal in his first state habeas action. Byford's pleading was not artful. Arguably, Byford should have stated each of the claims separately on the form habeas petition itself; that, however, is a matter of form. The Court considers the substance of Byford's original petition, not its

form. *See Ross*, 950 F.3d at 1173 n.19. It is plain to the Court that Byford meant to assert, and he gave sufficient notice to the respondents that he meant to assert, all the claims that he asserted before the Nevada Supreme Court on his direct appeal and on the appeal in his first state habeas action.

Among the exhibits attached to Byford's original petition and incorporated by reference were Byford's opening and reply briefs on his direct appeal to the Nevada Supreme Court (Exhs. 3 (ECF No. 1-3, pp. 8–116) and 4 (ECF No. 1-3, pp. 118–55)); the opinion of the Nevada Supreme Court on Byford's direct appeal (Exh. 5 (ECF No. 1-3, pp. 157–99)); Byford's opening and reply briefs on the appeal in his first state habeas action (Exhs. 6 (ECF Nos. 1-4, 1-5), 7 (ECF No. 1-6, pp. 2–45), 9 (ECF No. 1-7), 10 (ECF No. 1-8), 13 (ECF No. 1-10), 14 (ECF No. 1-11, pp. 2–24), 15 (ECF No. 1-11, pp. 26–94), and 16 (ECF No. 1-12, pp. 2–19)); and the orders and opinions of the Nevada Supreme Court on the appeal in Byford's first state habeas action (Exhs. 8 (ECF No. 1-6, pp. 46–50), 11 (ECF No. 1-9, pp. 2–6), 12 (ECF No. 1-9, pp. 8–13), 17 (ECF No. 1-12, pp. 21–55)). Applying *Ross*, the Court looks to those exhibits to determine what facts Byford presented in his original petition in support of the claims he attempted to assert in that petition.

      E.      Analysis of Individual Claims

            Claim 1A

In Claim 1A, Byford claims that his trial counsel was ineffective for failing to engage a firearms expert or a crime scene reconstructionist. Third Amended Habeas Petition (ECF No. 92), pp. 31–42.

Taking first the part of Claim 1A, regarding trial counsel's failure to engage a firearms expert, Byford asserted a somewhat similar claim on the appeal in his first state habeas action, and he incorporated the briefing asserting that claim into his timely original petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, p. 15 (ECF No. 1-4, p. 34); Appellant's Reply Brief, Exh. 7, pp. 9–10 (ECF No. 1-6, pp. 19–20); Appellant's Opening Brief, Exh. 9, p. 18

(ECF No. 1-7, p. 38); Appellant's Reply Brief, Exh. 10, pp. 11–12 (ECF No. 1-8, pp. 22–23); Appellant's Opening Brief, Exh. 13, pp. 18–19 (ECF No. 1-10, pp. 45–46); Appellant's Supplemental Opening Brief, Exh. 14, p. 5 (ECF No. 1-11, p. 6); Appellant's Reply Brief, Exh. 15, pp. 13–14 (ECF No. 1-11, pp. 47–48). Byford also asserted a somewhat similar claim in his timely first amended habeas petition in this action. *See* Amended Petition for Writ of Habeas Corpus (ECF No. 17), pp. 20–26, 37. The Court determines that these claims, asserted in Byford's timely original and first amended petitions, share a common core of operative facts with Claim 1A that Byford's trial counsel was ineffective during the guilt phase of his trial for failing to engage a firearms expert; therefore, this part Claim 1A relates back to the timely original and first amended petitions and is not barred by the statute of limitations.

In making this determination—and in ruling on the question of the relation back of any of Byford's claims in this order—the Court expresses no opinion regarding whether the claim is barred by the procedural default doctrine, what evidence may be considered in this action in support of the claim, or, of course, whether the claim has any merit.

Turning to the part of Claim 1A regarding trial counsel's failure to engage a crime scene reconstruction expert, Byford asserted a somewhat similar claim on the appeal in his first state habeas action, and he incorporated the briefing asserting that claim into his timely original petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, p. 13 (ECF No. 1-4, p. 32); Appellant's Reply Brief, Exh. 7, pp. 7–8 (ECF No. 1-6, pp. 17–18); Appellant's Opening Brief, Exh. 9, pp. 15–16 (ECF No. 1-7, pp. 35–36); Appellant's Reply Brief, Exh. 10, pp. 8–9 (ECF No. 1-8, pp. 19–20); Appellant's Opening Brief, Exh. 13, pp. 14–15 (ECF No. 1-10, pp. 41–42); Appellant's Supplemental Opening Brief, Exh. 14, pp. 3–4 (ECF No. 1-11, pp. 4-5); Appellant's Reply Brief, Exh. 15, pp. 9–10 (ECF No. 1-11, pp. 43–44). The Court determines that this claim, asserted in Byford's timely original petition, shares a common core of operative facts with the claim in Claim 1A that Byford's trial counsel was ineffective during the guilt phase of his trial for failing to engage a crime scene

1    reconstruction expert; therefore, this part Claim 1A relates back to Byford's timely

2    original petition and is not barred by the statute of limitations.

3            Claim 1B

4            In Claim 1B, Byford claims that his trial counsel was ineffective for failing to retain

5    a medical expert or pathologist and for failing to impeach Dr. Sheldon Green's testimony

6    at trial with his previous testimony from the September 10, 1992, preliminary hearing.

7    Third Amended Habeas Petition (ECF No. 92), pp. 42–47.

8            Byford asserted somewhat similar claims on the appeal in his first state habeas

9    action, and he incorporated the briefing asserting those claims into his timely original

10   petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3;

11   Appellant's Opening Brief, Exh. 6, pp. 15–17 (ECF No. 1-4, pp. 34–36); Appellant's

12   Reply Brief, Exh. 7, pp. 10–11 (ECF No. 1-6, pp. 20–21); Appellant's Opening Brief,

13   Exh. 9, pp. 19–20 (ECF No. 1-7, pp. 39–40); Appellant's Reply Brief, Exh. 10, pp. 12–13

14   (ECF No. 1-8, pp. 23–24); Appellant's Opening Brief, Exh. 13, pp. 19–21 (ECF No. 1-

15   10, pp. 46–48); Appellant's Supplemental Opening Brief, Exh. 14, p. 5 (ECF No. 1-11, p.

16   6); Appellant's Reply Brief, Exh. 15, pp. 15–16 (ECF No. 1-11, pp. 47–48). Byford also

17   asserted a somewhat similar claim in his timely first amended habeas petition in this

18   action. *See* Amended Petition for Writ of Habeas Corpus (ECF No. 17), pp. 23–25, 37.

19   The Court determines that these claims, asserted in Byford's timely original and first

20   amended petitions, share a common core of operative facts with Claim 1B; therefore,

21   Claim 1B relates back to the timely original and first amended petitions and is not barred

22   by the statute of limitations.

23           Claim 1C

24           In Claim 1C, Byford claims that his trial counsel was ineffective for failing to

25   introduce Williams's prior testimony. Third Amended Habeas Petition (ECF No. 92),

26   pp. 47–48.

27           Byford asserted a somewhat similar claim on the appeal in his first state habeas

28   action, and he incorporated the briefing asserting that claim into his timely original

petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, pp. 22–23 (ECF No. 1-4, pp. 41–42); Appellant's Reply Brief, Exh. 7, pp. 15–16 (ECF No. 1-6, pp. 25–26); Appellant's Opening Brief, Exh. 9, p. 29 (ECF No. 1-7, p. 48); Appellant's Reply Brief, Exh. 10, p. 19 (ECF No. 1-8, p. 30); Appellant's Opening Brief, Exh. 13, pp. 31–32 (ECF No. 1-10, pp. 58–59); Appellant's Supplemental Opening Brief, Exh. 14, p. 7 (ECF No. 1-11, p. 8); Appellant's Reply Brief, Exh. 15, pp. 24–26 (ECF No. 1-11, pp. 58–60). The Court determines that this claim, asserted in Byford's timely original petition, shares a common core of operative facts with Claim 1C; therefore, Claim 1C relates back to the timely original petition and is not barred by the statute of limitations.

Claim 1D

In Claim 1D, Byford claims that his trial counsel was ineffective for failing to impeach the testimony of Chief Deputy District Attorney David Schwartz. Third Amended Habeas Petition (ECF No. 92), pp. 48–50.

The Court determines that Byford did not, in either his timely original petition or his timely first amended petition, assert a claim sharing a common core of operative facts with Claim 1D. Therefore, Claim 1D does not relate back to either the original or first amended petition, and it is barred by the statute of limitations. Claim 1D will be dismissed on this ground.

Claim 1E

In Claim 1E, Byford claims that his trial counsel was ineffective for failing to object to the testimony of Detective Scholl. Third Amended Habeas Petition (ECF No. 92), pp. 50–51.

Byford asserted a somewhat similar claim on the appeal in his first state habeas action, and he incorporated the briefing asserting that claim into his timely original petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, pp. 23–24 (ECF No. 1-4, pp. 42–43); Appellant's Reply Brief, Exh. 7, p. 16 (ECF No. 1-6, p. 26); Appellant's Opening Brief, Exh. 9, pp.

31–32 (ECF No. 1-7, pp. 50–51); Appellant's Reply Brief, Exh. 10, p. 20 (ECF No. 1-8, p. 31); Appellant's Opening Brief, Exh. 13, pp. 33–34 (ECF No. 1-10, pp. 60–61); Appellant's Supplemental Opening Brief, Exh. 14, p. 8 (ECF No. 1-11, p. 9); Appellant's Reply Brief, Exh. 15, p. 27 (ECF No. 1-11, p. 61). The Court determines that this claim, asserted in Byford's timely original petition, shares a common core of operative facts with Claim 1E; therefore, Claim 1E relates back to the timely original petition and is not barred by the statute of limitations.

Claim 1F

In Claim 1F, Byford claims that his trial counsel was ineffective for failing to object to Deputy District Attorney Kephart becoming a witness in the case. Third Amended Habeas Petition (ECF No. 92), pp. 51–53.

Byford asserted a somewhat similar claim on the appeal in his first state habeas action, and he incorporated the briefing asserting that claim into his timely original petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, p. 17 (ECF No. 1-4, p. 36); Appellant's Reply Brief, Exh. 7, pp. 11–12 (ECF No. 1-6, pp. 21–22); Appellant's Opening Brief, Exh. 9, pp. 20–22 (ECF No. 1-7, pp. 40–42); Appellant's Reply Brief, Exh. 10, pp. 13–14 (ECF No. 1-8, pp. 24–25); Appellant's Opening Brief, Exh. 13, pp. 21–22 (ECF No. 1-10, pp. 48–49); Appellant's Supplemental Opening Brief, Exh. 14, p. 5 (ECF No. 1-11, p. 6); Appellant's Reply Brief, Exh. 15, pp. 16–17 (ECF No. 1-11, pp. 50–51). The Court determines that this claim, asserted in Byford's timely original petition, shares a common core of operative facts with Claim 1F; therefore, Claim 1F relates back to the timely original petition and is not barred by the statute of limitations.

Claim 1G

In Claim 1G, Byford claims that his trial counsel was ineffective for failing to investigate Wayne Porretti. Third Amended Habeas Petition (ECF No. 92), pp. 53–54.

Byford asserted a somewhat similar claim in his timely first amended habeas petition in this action. *See* Amended Petition for Writ of Habeas Corpus (ECF No. 17),

pp. 33–37. The Court determines that this claim, asserted in Byford's timely first amended petition, shares a common core of operative facts with Claim 1G; therefore, Claim 1G relates back to the timely first amended petition and is not barred by the statute of limitations.

Claim 1H

In Claim 1H, Byford claims that his trial counsel was ineffective failing to impeach Todd Smith with available evidence. Third Amended Habeas Petition (ECF No. 92), pp. 54–63.

Byford asserted a somewhat similar claim in his timely first amended habeas petition in this action. *See* Amended Petition for Writ of Habeas Corpus (ECF No. 17), pp. 20–32, 37. The Court determines that this claim, asserted in Byford's timely first amended petition, shares a common core of operative facts with Claim 1H; therefore, Claim 1H relates back to the timely first amended petition and is not barred by the statute of limitations.

Claim 1I

In Claim 1I, Byford claims that his trial counsel was ineffective for failing to introduce prior inconsistent statements of Todd Smith, Chad Simpson, and Billy Simpson as substantive evidence. Third Amended Habeas Petition (ECF No. 92), p. 63.

Byford asserted a somewhat similar claim on the appeal in his first state habeas action, and he incorporated the briefing asserting that claim into his timely original petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, pp. 20–21 (ECF No. 1-4, pp. 39–40); Appellant's Reply Brief, Exh. 7, pp. 14–15 (ECF No. 1-6, pp. 24–25); Appellant's Opening Brief, Exh. 9, pp. 25–27 (ECF No. 1-7, pp. 44–46); Appellant's Reply Brief, Exh. 10, pp. 17–18 (ECF No. 1-8, pp. 28–29); Appellant's Opening Brief, Exh. 13, pp. 27–29 (ECF No. 1-10, pp. 54–56); Appellant's Supplemental Opening Brief, Exh. 14, p. 7 (ECF No. 1-11, p. 8); Appellant's Reply Brief, Exh. 15, pp. 22–23 (ECF No. 1-11, pp. 56–57). The Court determines that this claim, asserted in Byford's timely original petition, shares a

common core of operative facts with Claim 1I; therefore, Claim 1I relates back to the timely original petition and is not barred by the statute of limitations.

Claim 1J

In Claim 1J, Byford claims that his trial counsel was ineffective for failing to introduce prior inconsistent statements of Billy Simpson as substantive evidence. Third Amended Habeas Petition (ECF No. 92), pp. 64–71.

Byford asserted a somewhat similar claim on the appeal in his first state habeas action, and he incorporated the briefing asserting that claim into his timely original petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, pp. 20–22 (ECF No. 1-4, pp. 39–41); Appellant's Reply Brief, Exh. 7, pp. 14–15 (ECF No. 1-6, pp. 24–25); Appellant's Opening Brief, Exh. 9, pp. 25–28 (ECF No. 1-7, pp. 44–47); Appellant's Reply Brief, Exh. 10, pp. 17–18 (ECF No. 1-8, pp. 28–29); Appellant's Opening Brief, Exh. 13, pp. 27–30 (ECF No. 1-10, pp. 54–57); Appellant's Supplemental Opening Brief, Exh. 14, p. 7 (ECF No. 1-11, p. 8); Appellant's Reply Brief, Exh. 15, pp. 22–24 (ECF No. 1-11, pp. 56–58). The Court determines that this claim, asserted in Byford's timely original petition, shares a common core of operative facts with Claim 1J; therefore, Claim 1J relates back to the timely original petition and is not barred by the statute of limitations.

Claim 1K

In Claim 1K, Byford claims that his trial counsel was ineffective for failing to introduce inconsistent statements of Chad Simpson as substantive evidence. Third Amended Habeas Petition (ECF No. 92), pp. 71–73.

Byford asserted a somewhat similar claim on the appeal in his first state habeas action, and he incorporated the briefing asserting that claim into his timely original petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, pp. 20–21 (ECF No. 1-4, pp. 39–40); Appellant's Reply Brief, Exh. 7, pp. 14–15 (ECF No. 1-6, pp. 24–25); Appellant's Opening Brief, Exh. 9, pp. 25–27 (ECF No. 1-7, pp. 44–46); Appellant's Reply Brief, Exh. 10, pp. 17–18

(ECF No. 1-8, pp. 28–29); Appellant's Opening Brief, Exh. 13, pp. 27–29 (ECF No. 1-10, pp. 54–56); Appellant's Supplemental Opening Brief, Exh. 14, p. 7 (ECF No. 1-11, p. 8); Appellant's Reply Brief, Exh. 15, pp. 22–23 (ECF No. 1-11, pp. 56–57). The Court determines that this claim, asserted in Byford's timely original petition, shares a common core of operative facts with Claim 1K; therefore, Claim 1K relates back to the timely original petition and is not barred by the statute of limitations.

Claim 1L

In Claim 1L, Byford claims that his trial counsel was ineffective for failing to introduce inconsistent statements of Todd Smith as substantive evidence. Third Amended Habeas Petition (ECF No. 92), pp. 73–75.

Byford asserted a somewhat similar claim on the appeal in his first state habeas action, and he incorporated the briefing asserting that claim into his timely original petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, pp. 20–21 (ECF No. 1-4, pp. 39–40); Appellant's Reply Brief, Exh. 7, pp. 14–15 (ECF No. 1-6, pp. 24–25); Appellant's Opening Brief, Exh. 9, pp. 25–27 (ECF No. 1-7, pp. 44–46); Appellant's Reply Brief, Exh. 10, pp. 17–18 (ECF No. 1-8, pp. 28–29); Appellant's Opening Brief, Exh. 13, pp. 27–29 (ECF No. 1-10, pp. 54–56); Appellant's Supplemental Opening Brief, Exh. 14, p. 7 (ECF No. 1-11, p. 8); Appellant's Reply Brief, Exh. 15, pp. 22–23 (ECF No. 1-11, pp. 56–57). The Court determines that this claim, asserted in Byford's timely original petition, shares a common core of operative facts with Claim 1L; therefore, Claim 1L relates back to the timely original petition and is not barred by the statute of limitations.

Claim 1M

In Claim 1M, Byford claims that his trial counsel was ineffective for failing to interview Loralee Silvey and present her testimony. Third Amended Habeas Petition (ECF No. 92), pp. 75–76.

Byford asserted a somewhat similar claim on the appeal in his first state habeas action, and he incorporated the briefing asserting that claim into his timely original

petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, p. 19 (ECF No. 1-4, p. 38); Appellant's Reply Brief, Exh. 7, p. 13 (ECF No. 1-6, p. 23); Appellant's Opening Brief, Exh. 9, p. 24 (ECF No. 1-7, p. 43); Appellant's Reply Brief, Exh. 10, p. 16 (ECF No. 1-8, p. 27); Appellant's Opening Brief, Exh. 13, p. 25 (ECF No. 1-10, p. 52); Appellant's Supplemental Opening Brief, Exh. 14, p. 6 (ECF No. 1-11, p. 7); Appellant's Reply Brief, Exh. 15, pp. 20–21 (ECF No. 1-11, pp. 54–55). The Court determines that this claim, asserted in Byford's timely original petition, shares a common core of operative facts with Claim 1M; therefore, Claim 1M relates back to the timely original petition and is not barred by the statute of limitations.

Claim 1N

In Claim 1N, Byford claims that his trial counsel was ineffective for failing to request jury instructions on voluntary intoxication. Third Amended Habeas Petition (ECF No. 92), pp. 76–77.

Byford asserted a somewhat similar claim on the appeal in his first state habeas action, and he incorporated the briefing asserting that claim into his timely original petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, pp. 24–25 (ECF No. 1-4, pp. 43–44); Appellant's Reply Brief, Exh. 7, pp. 16–17 (ECF No. 1-6, pp. 26–27); Appellant's Opening Brief, Exh. 9, pp. 32–33 (ECF No. 1-7, pp. 51–52); Appellant's Reply Brief, Exh. 10, pp. 20–21 (ECF No. 1-8, pp. 31–32); Appellant's Opening Brief, Exh. 13, pp. 34–35 (ECF No. 1-10, pp. 61–62); Appellant's Supplemental Opening Brief, Exh. 14, p. 8 (ECF No. 1-11, p. 9); Appellant's Reply Brief, Exh. 15, pp. 27–28 (ECF No. 1-11, pp. 61–62). The Court determines that this claim, asserted in Byford's timely original petition, shares a common core of operative facts with Claim 1N; therefore, Claim 1N relates back to the timely original petition and is not barred by the statute of limitations.

Claim 1O

In Claim 1O, Byford claims that his trial counsel was ineffective for failing to object to victim impact testimony presented in the guilt phase of the trial. Third Amended Habeas Petition (ECF No. 92), pp. 77–78.

Byford asserted a somewhat similar claim on the appeal in his first state habeas action, and he incorporated the briefing asserting that claim into his timely original petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, pp. 17–18 (ECF No. 1-4, pp. 36–37); Appellant's Reply Brief, Exh. 7, p. 12 (ECF No. 1-6, p. 22); Appellant's Opening Brief, Exh. 9, pp. 22–23 (ECF No. 1-7, pp. 42–43); Appellant's Reply Brief, Exh. 10, p. 14 (ECF No. 1-8, p. 25); Appellant's Opening Brief, Exh. 13, pp. 22–23 (ECF No. 1-10, pp. 49–50); Appellant's Supplemental Opening Brief, Exh. 14, pp. 5–6 (ECF No. 1-11, pp. 6–7); Appellant's Reply Brief, Exh. 15, pp. 17–18 (ECF No. 1-11, pp. 51–52). The Court determines that this claim, asserted in Byford's timely original petition, shares a common core of operative facts with Claim 1O; therefore, Claim 1O relates back to the timely original petition and is not barred by the statute of limitations.

Claim 1P

In Claim 1P, Byford claims that his trial counsel was ineffective for failing to challenge potential jurors for implied bias. Third Amended Habeas Petition (ECF No. 92), pp. 79–83.

Byford asserted a somewhat similar claim on the appeal in his first state habeas action, and he incorporated the briefing asserting that claim into his timely original petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, pp. 9–11 (ECF No. 1-4, pp. 28–30); Appellant's Reply Brief, Exh. 7, pp. 5–7 (ECF No. 1-6, pp. 15–17); Appellant's Opening Brief, Exh. 9, pp. 11–12 (ECF No. 1-7, pp. 31–32); Appellant's Reply Brief, Exh. 10, pp. 7–8 (ECF No. 1-8, pp. 18–19); Appellant's Opening Brief, Exh. 13, pp. 10–11 (ECF No. 1-10, pp. 37–38); Appellant's Supplemental Opening Brief, Exh. 14, p. 3 (ECF No. 1-11, p. 4);

Appellant's Reply Brief, Exh. 15, pp. 7–8 (ECF No. 1-11, pp. 41–42). The Court determines that this claim, asserted in Byford's timely original petition, shares a common core of operative facts with Claim 1P; therefore, Claim 1P relates back to the timely original petition and is not barred by the statute of limitations.

Claim 1Q

In Claim 1Q, Byford claims that his trial counsel was ineffective for failing to object to the trial court's biased questioning for rehabilitation of prospective jurors. Third Amended Habeas Petition (ECF No. 92), pp. 83–87.

Byford asserted a somewhat similar claim on the appeal in his first state habeas action, and he incorporated the briefing asserting that claim into his timely original petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, pp. 7–8 (ECF No. 1-4, pp. 26–27); Appellant's Reply Brief, Exh. 7, pp. 2–3 (ECF No. 1-6, pp. 12–13); Appellant's Opening Brief, Exh. 9, pp. 9–10 (ECF No. 1-7, pp. 29–30); Appellant's Reply Brief, Exh. 10, pp. 5–6 (ECF No. 1-8, pp. 16–17); Appellant's Opening Brief, Exh. 13, pp. 8–9 (ECF No. 1-10, pp. 35–36); Appellant's Supplemental Opening Brief, Exh. 14, pp. 2–3 (ECF No. 1-11, pp. 3–4); Appellant's Reply Brief, Exh. 15, pp. 4–5 (ECF No. 1-11, pp. 38–39). The Court determines that this claim, asserted in Byford's timely original petition, shares a common core of operative facts with Claim 1Q; therefore, Claim 1Q relates back to the timely original petition and is not barred by the statute of limitations.

Claim 1R

In Claim 1R, Byford claims that his trial counsel was ineffective for failing to object to prosecutorial misconduct. Third Amended Habeas Petition (ECF No. 92), p. 88.

Byford asserted a somewhat similar claim on the appeal in his first state habeas action, and he incorporated the briefing asserting that claim into his timely original petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, pp. 29–42 (ECF No. 1-4, p. 48 – ECF No. 1-5, p. 12); Appellant's Reply Brief, Exh. 7, pp. 18–24 (ECF No. 1-6, pp. 28–34); Appellant's

Opening Brief, Exh. 9, pp. 36–51 (ECF No. 1-7, pp. 55–70); Appellant's Reply Brief, Exh. 10, pp. 21–30 (ECF No. 1-8, pp. 32–41); Appellant's Opening Brief, Exh. 13, pp. 39–56 (ECF No. 1-10, pp. 66–83); Appellant's Supplemental Opening Brief, Exh. 14, pp. 8–9 (ECF No. 1-11, pp. 9–10); Appellant's Reply Brief, Exh. 15, pp. 29–43 (ECF No. 1-11, pp. 63–77). In addition, on his direct appeal, before the Nevada Supreme Court, Byford asserted a claim that shares core operative facts with Ground 1R, and Byford incorporated the briefing asserting that claim into his timely original petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 3, pp. 36–42 (ECF No. 1-3, pp. 55–61); Appellant's Reply Brief, Exh. 4, pp. 8–10 (ECF No. 1-3, pp. 131–33). The Court determines that these claims, asserted in Byford's timely original petition, share a common core of operative facts with Claim 1R; therefore, Claim 1R relates back to the timely original petition and is not barred by the statute of limitations.

The Court recognizes that there are differences between the specific alleged prosecutorial misconduct incorporated into Claim 1R and the specific prosecutorial misconduct alleged in state court and incorporated into Byford's original petition. While the Court here determines that the shared core of operative facts is sufficient for purposes of the statute of limitations, the Court recognizes that there may be issues regarding possible procedural default of portions of this claim—and other claims in which the presentation of the claim in this action differs from the presentation of the claim in state court—to be resolved in conjunction with the merits of the claims.

Claim 1S

In Claim 1S, Byford claims that his trial counsel was ineffective for failing to object to inaccurate or incomplete jury instructions. Third Amended Habeas Petition (ECF No. 92), pp. 88–89.

Byford asserted somewhat similar claims on the appeal in his first state habeas action, and he incorporated the briefing asserting those claims into his timely original petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3;

Appellant's Opening Brief, Exh. 6, pp. 25–29, 48 (ECF No. 1-4, pp. 44–48, ECF No. 1-5, p. 18); Appellant's Reply Brief, Exh. 7, pp. 17–18 (ECF No. 1-6, pp. 27–28); Appellant's Opening Brief, Exh. 9, pp. 33–36 (ECF No. 1-7, pp. 52–55); Appellant's Reply Brief, Exh. 10, p. 32 (ECF No. 1-8, p. 43); Appellant's Opening Brief, Exh. 13, pp. 35–39, 64 (ECF No. 1-10, pp. 62–66, 91); Appellant's Supplemental Opening Brief, Exh. 14, p. 8 (ECF No. 1-11, p. 9); Appellant's Reply Brief, Exh. 15, pp. 28–29 (ECF No. 1-11, pp. 62–63); Appellant's Supplemental Reply Brief, Exh. 16, pp. 7–10 (ECF No. 1-12, pp. 12–15). In addition, on his direct appeal before the Nevada Supreme Court, Byford asserted claims sharing core operative facts with Claim 1S, and Byford incorporated those claims from his direct appeal into his timely original petition. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 3, pp. 62–73 (ECF No. 1-3, pp. 81–92); Appellant's Reply Brief, Exh. 4, pp. 18–20 (ECF No. 1-3, pp. 141–43). The Court determines that these claims, asserted in Byford's timely original petition, share a common core of operative facts with Claim 1S; therefore, Claim 1S relates back to the timely original petition and is not barred by the statute of limitations.

Claim 1T

In Claim 1T, Byford claims that his trial counsel was ineffective for failing to adequately prepare or advise Byford regarding testifying at the 1994 trial. Third Amended Habeas Petition (ECF No. 92), pp. 89–91.

Byford asserted a somewhat similar claim on the appeal in his first state habeas action, and he incorporated the briefing asserting that claim into his timely original petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, p. 14 (ECF No. 1-4, p. 7); Appellant's Opening Brief, Exh. 9, p. 16 (ECF No. 1-7, p. 36); Appellant's Reply Brief, Exh. 10, p. 9 (ECF No. 1-8, p. 20); Appellant's Opening Brief, Exh. 13, pp. 15–16 (ECF No. 1-10, pp. 42–43); Appellant's Supplemental Opening Brief, Exh. 14, p. 4 (ECF No. 1-11, p. 5); Appellant's Reply Brief, Exh. 15, pp. 10–11 (ECF No. 1-11, pp. 44–45). The Court determines that this claim, asserted in Byford's timely original petition, shares a common core of

operative facts with Claim 1T; therefore, Claim 1T relates back to the timely original petition and is not barred by the statute of limitations.

Claim 1U

In Claim 1U, Byford claims that his trial counsel was ineffective for failing to advise Byford of Williams's December 10, 1992, voluntary statement to the police. Third Amended Habeas Petition (ECF No. 92), pp. 91–93.

The Court determines that Byford did not, in either his timely original petition or his timely first amended petition, assert a claim sharing a common core of operative facts with Claim 1U. Therefore, Claim 1U does not relate back to either the original or first amended petition, and it is barred by the statute of limitations. Claim 1U will be dismissed on this ground.

Claim 1V

In Claim 1V, Byford claims that his trial counsel was ineffective for failing to object to equal consideration of death penalty as qualification. Third Amended Habeas Petition (ECF No. 92), p. 93.

Byford asserted a somewhat similar claim on the appeal in his first state habeas action, and he incorporated the briefing asserting that claim into his timely original petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, pp. 8–9 (ECF No. 1-4, pp. 27–28); Appellant's Reply Brief, Exh. 7, pp. 4–5 (ECF No. 1-6, pp. 14–15); Appellant's Opening Brief, Exh. 9, pp. 10–11 (ECF No. 1-7, pp. 30–31); Appellant's Reply Brief, Exh. 10, pp. 6–7 (ECF No. 1-8, pp. 17–18); Appellant's Opening Brief, Exh. 13, pp. 9–10 (ECF No. 1-10, pp. 36–37); Appellant's Supplemental Opening Brief, Exh. 14, p. 3 (ECF No. 1-11, p. 4); Appellant's Reply Brief, Exh. 15, pp. 5–7 (ECF No. 1-11, pp. 39–41). The Court determines that this claim, asserted in Byford's timely original petition, shares a common core of operative facts with the claim in Claim 1V; therefore, Claim 1V relates back to the timely original petition and is not barred by the statute of limitations.

1    Claim 1W

2        In Claim 1W, Byford claims that his trial counsel was ineffective for failing to

3    ensure all proceedings were recorded. Third Amended Habeas Petition (ECF No. 92),

4    pp. 94–96.

5        Byford asserted a somewhat similar claim on the appeal in his first state habeas

6    action, and he incorporated the briefing asserting that claim into his timely original

7    petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3;

8    Appellant's Opening Brief, Exh. 6, pp. 11–13 (ECF No. 1-4, pp. 30–32); Appellant's

9    Reply Brief, Exh. 7, p. 7 (ECF No. 1-6, p. 17); Appellant's Opening Brief, Exh. 9, pp. 12–

10   15 (ECF No. 1-7, pp. 32–35); Appellant's Reply Brief, Exh. 10, p. 8 (ECF No. 1-8, p. 19);

11   Appellant's Opening Brief, Exh. 13, pp. 11–14 (ECF No. 1-10, pp. 38–41); Appellant's

12   Supplemental Opening Brief, Exh. 14, p. 3 (ECF No. 1-11, p. 4); Appellant's Reply Brief,

13   Exh. 15, pp. 8–9 (ECF No. 1-11, pp. 42–43). The Court determines that this claim,

14   asserted in Byford's timely original petition, shares a common core of operative facts

15   with Claim 1W; therefore, Claim 1W relates back to the timely original petition and is not

16   barred by the statute of limitations.

17   Claim 1X

18       In Claim 1X, Byford claims that his trial counsel was ineffective for failing to

19   object to Byford's absence from proceedings. Third Amended Habeas Petition (ECF No.

20   92), p. 96.

21       Byford asserted a somewhat similar claim on the appeal in his first state habeas

22   action, and he incorporated the briefing asserting that claim into his timely original

23   petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3;

24   Appellant's Opening Brief, Exh. 6, pp. 11–13 (ECF No. 1-4, pp. 30–32); Appellant's

25   Reply Brief, Exh. 7, p. 7 (ECF No. 1-6, p. 17); Appellant's Opening Brief, Exh. 9, pp. 12–

26   15 (ECF No. 1-7, pp. 32–35); Appellant's Reply Brief, Exh. 10, p. 8 (ECF No. 1-8, p. 19);

27   Appellant's Opening Brief, Exh. 13, pp. 11–14 (ECF No. 1-10, pp. 38–41); Appellant's

28   Supplemental Opening Brief, Exh. 14, p. 3 (ECF No. 1-11, p. 4); Appellant's Reply Brief,

Exh. 15, pp. 8–9 (ECF No. 1-11, pp. 42–43). The Court determines that this claim, asserted in Byford's timely original petition, shares a common core of operative facts with Claim 1X; therefore, Claim 1X relates back to the timely original petition and is not barred by the statute of limitations.

Claim 1Y

In Claim 1Y, Byford claims that his trial counsel was ineffective for failing to object to popularly elected judges presiding over the trial and appellate proceedings. Third Amended Habeas Petition (ECF No. 92), p. 96.

The Court determines that Byford did not, in either his timely original petition or his timely first amended petition, assert a claim sharing a common core of operative facts with Claim 1Y. Therefore, Claim 1Y does not relate back to either the original or first amended petition, and it is barred by the statute of limitations. Claim 1Y will be dismissed on this ground.

Claim 1Z

In Claim 1Z, Byford claims that he was prejudiced by the cumulative effect of the failures of his trial counsel alleged in Claim 1. Third Amended Habeas Petition (ECF No. 92), pp. 97–99. The Court determines that this claim of cumulative error is not barred by the statute of limitations, as underlying claims upon which it is based are not barred.

Claim 2

In Claim 2, Byford claims that the prosecution failed to disclose material exculpatory evidence regarding, and failed to correct false testimony of, Wayne Porretti. Third Amended Habeas Petition (ECF No. 92), pp. 100–26. Claim 2 includes five subparts—Claims 2A, 2B, 2C, 2D and 2E—but for purposes of this order, Claim 2 can be considered in its entirety, as a single claim.

Byford asserted somewhat similar claims in his timely first amended habeas petition in this action. *See* Amended Petition for Writ of Habeas Corpus (ECF No. 17), pp. 33–37. Also, on the appeal in his first state habeas action, Byford asserted a claim sharing core operative facts with Claim 2, and he incorporated that claim into his timely

original petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Supplemental Reply Brief, Exh. 16, pp. 10–13 (ECF No. 1-12, pp. 15–18. The Court determines that these claims, asserted in Byford's timely original and first amended petitions, share a common core of operative facts with Claim 2; therefore, Claim 2 relates back to the timely original and first amended petitions and is not barred by the statute of limitations.

Claim 3

In Claim 3, Byford claims that the trial court allowed a deputy district attorney to vouch for the testimony of Smith by testifying about why Smith was given a plea deal. Third Amended Habeas Petition (ECF No. 92), pp. 127–29.

On the appeal in his first state habeas action, Byford asserted a claim sharing core operative facts with Claim 3, and he incorporated the briefing asserting that claim into his timely original petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, pp. 23–24 (ECF No. 1-4, pp. 42–43); Appellant's Reply Brief, Exh. 7, p. 16 (ECF No. 1-6, p. 26); Appellant's Opening Brief, Exh. 9, pp. 29–31 (ECF No. 1-7, pp. 48–50); Appellant's Reply Brief, Exh. 10, pp. 19–20 (ECF No. 1-8, pp. 30–31); Appellant's Opening Brief, Exh. 13, pp. 32–33 (ECF No. 1-10, pp. 59–60); Appellant's Supplemental Opening Brief, Exh. 14, pp. 7–8 (ECF No. 1-11, pp. 8–9); Appellant's Reply Brief, Exh. 15, p. 26 (ECF No. 1-11, p. 60). The Court determines that this claim, asserted in Byford's timely original petition, shares a common core of operative facts with Claim 3; therefore, Claim 3 relates back to the timely original petition and is not barred by the statute of limitations.

Claim 4

In Claim 4, Byford claims that the prosecution committed misconduct. Third Amended Habeas Petition (ECF No. 92), pp. 130–82. Claim 4 includes numerous subparts, but for purposes of this order Claim 4 can be considered in its entirety, as a single claim.

On the appeal in his first state habeas action, Byford asserted claims sharing core operative facts with Claim 4, and he incorporated the briefing asserting those claims into his timely original petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, pp. 29–42 (ECF No. 1-4, p. 48 – ECF No. 1-5, p. 12); Appellant's Reply Brief, Exh. 7, pp. 18–24 (ECF No. 1-6, pp. 28–34); Appellant's Opening Brief, Exh. 9, pp. 36–51 (ECF No. 1-7, pp. 55–70); Appellant's Reply Brief, Exh. 10, pp. 21–30 (ECF No. 1-8, pp. 32–41); Appellant's Opening Brief, Exh. 13, pp. 39–57 (ECF No. 1-10, pp. 66–84); Appellant's Supplemental Opening Brief, Exh. 14, pp. 8–9 (ECF No. 1-11, pp. 9–10); Appellant's Reply Brief, Exh. 15, pp. 29–43 (ECF No. 1-11, pp. 63–77). In addition, on his direct appeal, before the Nevada Supreme Court, Byford asserted a claim that shares core operative facts with Claim 4, and Byford incorporated the briefing asserting that claim into his timely original petition in this action. *See* Appellant's Opening Brief, Exh. 3, pp. 36–42 (ECF No. 1-3, pp. 55–61); Appellant's Reply Brief, Exh. 4, pp. 8–10 (ECF No. 1-3, pp. 131–33). The Court determines that these claims, asserted in Byford's timely original petition, share a common core of operative facts with Claim 4; therefore, Claim 4 relates back to the timely original petition and is not barred by the statute of limitations.

Claim 5A

In Claim 5A, Byford claims that the jurors received erroneous instructions on aiding and abetting. Third Amended Habeas Petition (ECF No. 92), pp. 183–95.

Byford asserted a claim sharing core operative facts with Claim 5A on the appeal in his first state habeas action, and he incorporated the briefing asserting that claim into his timely original petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, pp. 25–26 (ECF No. 1-4, pp. 44–45); Appellant's Reply Brief, Exh. 7, pp. 17–18 (ECF No. 1-6, pp. 27–28); Appellant's Supplemental Reply Brief, Exh. 16, pp. 7–10 (ECF No. 1-12, pp. 12–15). Also, Byford asserted a somewhat similar claim in his timely first amended habeas petition in this action. *See* Amended Petition for Writ of Habeas Corpus (ECF No. 17), pp. 47–50. The

45

Court determines that these claims, asserted in Byford's timely original and first amended petitions, share a common core of operative facts with Claim 5A; therefore, Claim 5A relates back to the timely original and first amended petitions and is not barred by the statute of limitations.

Claim 5B

In Claim 5B, Byford claims that the jurors received an erroneous instruction on premeditation and deliberation. Third Amended Habeas Petition (ECF No. 92), pp. 195–203.

Byford asserted a claim sharing core operative facts with Claim 5B on the appeal in his first state habeas action, and he incorporated the briefing asserting that claim into his timely original petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Supplemental Reply Brief, Exh. 16, pp. 4–7 (ECF No. 1-12, pp. 9–12). Also, Byford asserted a somewhat similar claim in his timely first amended habeas petition in this action. *See* Amended Petition for Writ of Habeas Corpus (ECF No. 17), pp. 7–10. Byford also asserted a somewhat similar claim on his direct appeal before the Nevada Supreme Court, and he incorporated that claim into his timely original petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 3, pp. 64–70 (ECF No. 1-3, pp. 83–89); Appellant's Reply Brief, Exh. 4, p. 19 (ECF No. 1-3, p. 142). The Court determines that these claims, asserted in Byford's timely original and first amended petitions, share a common core of operative facts with Claim 5B; therefore, Claim 5B relates back to the timely original and first amended petitions and is not barred by the statute of limitations.

Claim 5C

In Claim 5C, Byford claims that the jurors received an erroneous instruction on reasonable doubt. Third Amended Habeas Petition (ECF No. 92), pp. 203–06.

On the appeal in his first state habeas action, Byford asserted a claim sharing core operative facts with Claim 5C, and he incorporated the briefing asserting that claim into his timely original petition in this action. *See* Petition for Writ of Habeas Corpus

(ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, pp. 26–27 (ECF No. 1-4, pp. 45–46); Appellant's Opening Brief, Exh. 9, p. 33 (ECF No. 1-7, p. 52); Appellant's Opening Brief, Exh. 13, pp. 35–36 (ECF No. 1-10, pp. 62–63); Appellant's Supplemental Opening Brief, Exh. 14, p. 8 (ECF No. 1-11, p. 9); Appellant's Reply Brief, Exh. 15, pp. 28–29 (ECF No. 1-11, pp. 62–63). The Court determines that this claim, asserted in Byford's timely original petition, shares a common core of operative facts with Claim 5C; therefore, Claim 5C relates back to the timely original petition and is not barred by the statute of limitations.

Claim 5D

In Claim 5D, Byford claims that the jurors received an erroneous instruction on implied malice. Third Amended Habeas Petition (ECF No. 92), pp. 207–09.

Byford asserted a somewhat similar claim in his timely first amended habeas petition in this action. *See* Amended Petition for Writ of Habeas Corpus (ECF No. 17), pp. 5–6. Byford also asserted a somewhat similar claim on his direct appeal before the Nevada Supreme Court, and he incorporated his briefing asserting that claim into his timely original petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 3, pp. 62–63 (ECF No. 1-3, pp. 81–82); Appellant's Reply Brief, Exh. 4, p. 18 (ECF No. 1-3, p. 141). The Court determines that these claims, asserted in Byford's timely original and first amended petitions, share a common core of operative facts with Claim 5D; therefore, Claim 5D relates back to the timely original and first amended petitions and is not barred by the statute of limitations.

Claim 5E

In Claim 5E, Byford claims that the jurors received an erroneous instruction on equal and exact justice. Third Amended Habeas Petition (ECF No. 92), pp. 209–11.

On the appeal in his first state habeas action, Byford asserted a claim sharing core operative facts with Claim 5E, and he incorporated the briefing asserting that claim into his timely original petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, p. 27 (ECF No. 1-4, p. 46);

Appellant's Opening Brief, Exh. 9, pp. 33–34 (ECF No. 1-7, pp. 52–53); Appellant's
Opening Brief, Exh. 13, pp. 36–37 (ECF No. 1-10, pp. 63–64); Appellant's Supplemental
Opening Brief, Exh. 14, p. 8 (ECF No. 1-11, p. 9); Appellant's Reply Brief, Exh. 15, p. 29
(ECF No. 1-11, p. 63). The Court determines that this claim, asserted in Byford's timely
original petition, shares a common core of operative facts with Claim 5E; therefore,
Claim 5E relates back to the timely original petition and is not barred by the statute of
limitations.

Claim 5F

In Claim 5F, Byford claims that the jurors received an erroneous instruction on
guilt or innocence of another person. Third Amended Habeas Petition (ECF No. 92), pp.
211–13.

On the appeal in his first state habeas action, Byford asserted a claim sharing
core operative facts with Claim 5F, and he incorporated the briefing asserting that claim
into his timely original petition in this action. *See* Petition for Writ of Habeas Corpus
(ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, pp. 27–28 (ECF No. 1-4, pp. 46–
47); Appellant's Opening Brief, Exh. 9, pp. 34–35 (ECF No. 1-7, pp. 53–54); Appellant's
Opening Brief, Exh. 13, pp. 37–38 (ECF No. 1-10, pp. 64–65); Appellant's Supplemental
Opening Brief, Exh. 14, p. 8 (ECF No. 1-11, p. 9); Appellant's Reply Brief, Exh. 15, p. 29
(ECF No. 1-11, p. 63). The Court determines that this claim, asserted in Byford's timely
original petition, shares a common core of operative facts with Claim 5F; therefore,
Claim 5F relates back to the timely original petition and is not barred by the statute of
limitations.

Claim 5G

In Claim 5G, Byford claims that the jurors received an incomplete accomplice
instruction. Third Amended Habeas Petition (ECF No. 92), pp. 213–14.

On the appeal in his first state habeas action, Byford asserted a claim sharing
core operative facts with Claim 5G, and he incorporated the briefing asserting that claim
into his timely original petition in this action. *See* Petition for Writ of Habeas Corpus

(ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, pp. 28–29 (ECF No. 1-4, pp. 47–48); Appellant's Opening Brief, Exh. 9, pp. 35–36 (ECF No. 1-7, pp. 54–55); Appellant's Opening Brief, Exh. 13, pp. 38–39 (ECF No. 1-10, pp. 65–66); Appellant's Supplemental Opening Brief, Exh. 14, p. 8 (ECF No. 1-11, p. 9); Appellant's Reply Brief, Exh. 15, p. 29 (ECF No. 1-11, p. 63). The Court determines that this claim, asserted in Byford's timely original petition, shares a common core of operative facts with Claim 5G; therefore, Claim 5G relates back to the timely original petition and is not barred by the statute of limitations.

Claim 5H

In Claim 5H, Byford claims that he was prejudiced by the cumulative effect of the instructional error alleged in Claims 5A–5G. Third Amended Habeas Petition (ECF No. 92), p. 214. The Court determines that this claim of cumulative error is not barred by the statute of limitations, as underlying claims upon which it is based are not barred.

Claim 6

In Claim 6, Byford claims that the trial court improperly admitted Byford's testimony from his first trial. Third Amended Habeas Petition (ECF No. 92), pp. 215–19.

Byford asserted claims sharing core operative facts with Claim 6 on his direct appeal before the Nevada Supreme Court, and he incorporated his briefing of those claims into his timely original petition in this case. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 3, pp. 49–57 (ECF No. 1-3, pp. 68–76); Appellant's Reply Brief, Exh. 4, pp. 13–15 (ECF No. 1-3, pp. 136–38). Byford also asserted claims sharing core operative facts with Claim 6 on his appeal in his first state habeas action, and he incorporated those claims, as well, into his timely original petition in this case. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, p. 14 (ECF No. 1-4, p. 33); Appellant's Reply Brief, Exh. 7, p. 8 (ECF No. 1-6, p. 18); Appellant's Opening Brief, Exh. 9, pp. 16–17 (ECF No. 1-7, pp. 36–37); Appellant's Reply Brief, Exh. 10, pp. 9–10 (ECF No. 1-8, pp. 20–21); Appellant's Opening Brief, Exh. 13, pp. 15–17 (ECF No. 1-10, pp. 42–44);

Appellant's Supplemental Opening Brief, Exh. 14, p. 4 (ECF No. 1-11, p. 5); Appellant's

Reply Brief, Exh. 15, pp. 10–12 (ECF No. 1-11, pp. 44–46). The Court determines that

these claims, asserted in Byford's timely original petition, share a common core of

operative facts with Claim 6; therefore, Claim 6 relates back to the timely original

petition and is not barred by the statute of limitations.

Claim 7

In Claim 7, Byford claims that the trial court refused to sever Byford's case from

that of his co-defendant. Third Amended Habeas Petition (ECF No. 92), pp. 220–28.

Claim 7 includes two subparts—Claims 7A and 7B—but for purposes of this order,

Claim 7 can be considered in its entirety, as a single claim.

Byford asserted a somewhat similar claim on his direct appeal before the Nevada

Supreme Court, and he incorporated his briefing of that claim into his timely original

petition in this case. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3;

Appellant's Opening Brief, Exh. 3, pp. 29–32 (ECF No. 1-3, pp. 48–51); Appellant's

Reply Brief, Exh. 4, pp. 4–5 (ECF No. 1-3, pp. 127–28). The Court determines that

claim, asserted in Byford's timely original petition, shares a common core of operative

facts with Claim 7; therefore, Claim 7 relates back to the timely original petition and is

not barred by the statute of limitations.

Claim 8

In Claim 8, Byford claims that his right to a speedy trial was violated. Third

Amended Habeas Petition (ECF No. 92), pp. 229–33.

Byford asserted a somewhat similar claim on his direct appeal before the Nevada

Supreme Court, and he incorporated his briefing of that claim into his timely original

petition in this case. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3;

Appellant's Opening Brief, Exh. 3, pp. 33–35 (ECF No. 1-3, pp. 52–54); Appellant's

Reply Brief, Exh. 4, pp. 6–7 (ECF No. 1-3, pp. 129–30). The Court determines that

claim, asserted in Byford's timely original petition, shares a common core of operative

facts with Claim 8; therefore, Claim 8 relates back to the timely original petition and is not barred by the statute of limitations.

Claim 9

In Claim 9, Byford claims that the torture or mutilation aggravating circumstance found by the jury was invalid. Third Amended Habeas Petition (ECF No. 92), pp. 234–49. Claim 9 includes six subparts—Claims 9A, 9B, 9C, 9D, 9E and 9F—but for purposes of this order, Claim 9 can be considered in its entirety, as a single claim.

Byford asserted a somewhat similar claim in his timely first amended habeas petition in this action. *See* Amended Petition for Writ of Habeas Corpus (ECF No. 17), pp. 51–55. Byford also asserted a somewhat similar claim on his direct appeal before the Nevada Supreme Court, and he incorporated his briefing of that claim into his timely original petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 3, pp. 80–89 (ECF No. 1-3, pp. 99–108); Appellant's Reply Brief, Exh. 4, pp. 24–25 (ECF No. 1-3, pp. 149–50). In addition, on the appeal in his first state habeas action, Byford asserted claims sharing core operative facts with Claim 9, and he incorporated his briefing of those claims into his timely original petition. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, pp. 42–54 (ECF No. 1-5, pp. 12–24); Appellant's Reply Brief, Exh. 7, pp. 24–28 (ECF No. 1-6, pp. 34–38); Appellant's Opening Brief, Exh. 9, pp. 51–60 (ECF No. 1-7, pp. 70–79); Appellant's Reply Brief, Exh. 10, pp. 30–33 (ECF No. 1-8, pp. 41–44); Appellant's Opening Brief, Exh. 13, pp. 57–71 (ECF No. 1-10, pp. 84–98); Appellant's Supplemental Opening Brief, Exh. 14, p. 9 (ECF No. 1-11, p. 10); Appellant's Reply Brief, Exh. 15, pp. 43–50 (ECF No. 1-11, pp. 77–84). The Court determines that these claims, asserted in Byford's timely original and first amended petitions, share a common core of operative facts with Claim 9; therefore, Claim 9 relates back to the timely original and first amended petitions and is not barred by the statute of limitations.

Claim 10

In Claim 10, Byford claims that the aggravating circumstance of "under sentence of imprisonment" is invalid as applied to him. Third Amended Habeas Petition (ECF No. 92), pp. 250–52.

On the appeal in his first state habeas action, Byford asserted a claim sharing core operative facts with Claim 10, and he incorporated his briefing of that claim into his timely original petition. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, pp. 59–61 (ECF No. 1-5, pp. 29–31); Appellant's Opening Brief, Exh. 9, pp. 68–70 (ECF No. 1-7, pp. 87–89); Appellant's Reply Brief, Exh. 10, p. 36 (ECF No. 1-8, pp. 47); Appellant's Opening Brief, Exh. 13, pp. 77–79 (ECF No. 1-10, pp. 104–06); Appellant's Supplemental Opening Brief, Exh. 14, pp. 10–11 (ECF No. 1-11, pp. 11–12); Appellant's Reply Brief, Exh. 15, p. 53 (ECF No. 1-11, p. 87). The Court determines that this claim, asserted in Byford's timely original petition, shares a common core of operative facts with Claim 10; therefore, Claim 10 relates back to the timely original petition and is not barred by the statute of limitations.

Claim 11A

In Claim 11, Byford claims that his trial counsel was ineffective in the penalty phase. Third Amended Habeas Petition (ECF No. 92), pp. 253–97. Claim 11 includes eight subparts—Claims 11A, 11B, 11C (which itself includes eight subparts), 11D, 11E, 11F, 11G and 11H. In Claim 11A, Byford summarizes the penalty phase evidence that was presented. *Id.* at 253–56. The Court does not read Claim 11A to assert a standalone claim, but rather to be background information to be considered with respect to the other subparts of Claim 11.

Claims 11B and 11C

In Claim 11B, Byford claims that his trial counsel failed to adequately investigate, develop and prepare a case in mitigation, and in Claim 11C, Byford identifies specific mitigation evidence that he claims his trial counsel did not adequately present. Third Amended Habeas Petition (ECF No. 92), pp. 256–95.

In his timely first amended petition, Byford asserted a claim sharing core operative facts with Claims 11B and 11C. *See* Amended Petition for Writ of Habeas Corpus (ECF No. 17), pp. 38–46. The Court determines that this claim, asserted in Byford's timely first amended petition, shares a common core of operative facts with Claims 11B and 11C; therefore, Claims 11B and 11C relate back to the timely first amended petition and are not barred by the statute of limitations.

Claim 11D

In Claim 11D, Byford claims that his trial counsel failed to object to the aggravating circumstance of "under sentence of imprisonment." Third Amended Habeas Petition (ECF No. 92), pp. 295–96.

On the appeal in his first state habeas action, Byford asserted a somewhat similar claim, and he incorporated his briefing of that claim into his timely original petition. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, pp. 59–61 (ECF No. 1-5, pp. 29–31); Appellant's Opening Brief, Exh. 9, pp. 68–70 (ECF No. 1-7, pp. 87–89); Appellant's Reply Brief, Exh. 10, p. 36 (ECF No. 1-8, pp. 47); Appellant's Opening Brief, Exh. 13, pp. 77–79 (ECF No. 1-10, pp. 104–06); Appellant's Supplemental Opening Brief, Exh. 14, pp. 10–11 (ECF No. 1-11, pp. 11–12); Appellant's Reply Brief, Exh. 15, p. 53 (ECF No. 1-11, p. 87). The Court determines that this claim, asserted in Byford's timely original petition, shares a common core of operative facts with Claim 11D; therefore, Claim 11D relates back to the timely original petition and is not barred by the statute of limitations.

Claim 11E

In Claim 11E, Byford claims that his trial counsel failed to object on all available grounds to the aggravating circumstance that the murder involved torture or mutilation of the victim. Third Amended Habeas Petition (ECF No. 92), p. 296.

In his timely first amended petition, Byford asserted a claim sharing core operative facts with Claim 11E. *See* Amended Petition for Writ of Habeas Corpus (ECF No. 17), pp. 51–55. Also, on his direct appeal to the Nevada Supreme Court, Byford

asserted a claim sharing core operative facts with Claim 11E, and he incorporated his briefing of that claim into his timely original petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 3, pp. 80–89 (ECF No. 1-3, pp. 99–108); Appellant's Reply Brief, Exh. 4, pp. 24–25 (ECF No. 1-3, pp. 149–50). In addition, on the appeal in his first state habeas action, Byford asserted claims somewhat similar to Claim 11E, and he incorporated his briefing of those claims into his timely original petition. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, pp. 42–54 (ECF No. 1-5, pp. 12–24); Appellant's Reply Brief, Exh. 7, pp. 24–28 (ECF No. 1-6, pp. 34–38); Appellant's Opening Brief, Exh. 9, pp. 51–60 (ECF No. 1-7, pp. 70–79); Appellant's Reply Brief, Exh. 10, pp. 30–33 (ECF No. 1-8, pp. 41–44); Appellant's Opening Brief, Exh. 13, pp. 57–71 (ECF No. 1-10, pp. 84–98); Appellant's Supplemental Opening Brief, Exh. 14, p. 9 (ECF No. 1-11, p. 10); Appellant's Reply Brief, Exh. 15, pp. 43–50 (ECF No. 1-11, pp. 77–84). The Court determines that these claims, asserted in Byford's timely original and first amended petitions, share a common core of operative facts with Claim 11E; therefore, Claim 11E relates back to the timely original and first amended petitions and is not barred by the statute of limitations.

Claim 11F

In Claim 11F, Byford claims that his trial counsel failed to object to the commutation instruction. Third Amended Habeas Petition (ECF No. 92), p. 297.

On the appeal in his first state habeas action, Byford asserted a claim somewhat similar to Claim 11F, and he incorporated his briefing of that claim into his timely original petition. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, p. 48 (ECF No. 1-5, p. 18); Appellant's Opening Brief, Exh. 9, pp. 56–57 (ECF No. 1-7, pp. 75–76); Appellant's Reply Brief, Exh. 10, p. 32 (ECF No. 1-8, p. 43); Appellant's Opening Brief, Exh. 13, p. 64 (ECF No. 1-10, p. 91); Appellant's Supplemental Opening Brief, Exh. 14, p. 9 (ECF No. 1-11, p. 10); Appellant's Reply Brief, Exh. 15, p. 46 (ECF No. 1-11, p. 80). The Court determines that this claim,

asserted in Byford's timely original petition, shares a common core of operative facts with Claim 11F; therefore, Claim 11F relates back to the timely original petition and is not barred by the statute of limitations.

Claim 11G

In Claim 11G, Byford claims that his trial counsel failed to object to the jury instruction listing mitigating circumstances that the defense did not assert, and that were therefore irrelevant, and to the prosecution's argument addressing the irrelevant mitigating circumstances. Third Amended Habeas Petition (ECF No. 92), p. 297.

On the appeal in his first state habeas action, Byford asserted a claim somewhat similar to Claim 11G, and he incorporated his briefing of that claim into his timely original petition. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, pp. 54–55 (ECF No. 1-5, pp. 24–25); Appellant's Opening Brief, Exh. 9, pp. 62–64 (ECF No. 1-7, pp. 81–83); Appellant's Reply Brief, Exh. 10, pp. 34–35 (ECF No. 1-8, pp. 45–46); Appellant's Opening Brief, Exh. 13, pp. 71–72 (ECF No. 1-10, pp. 98–99); Appellant's Supplemental Opening Brief, Exh. 14, pp. 9–10 (ECF No. 1-11, pp. 10–11); Appellant's Reply Brief, Exh. 15, pp. 50–51 (ECF No. 1-11, pp. 84–85). The Court determines that this claim, asserted in Byford's timely original petition, shares a common core of operative facts with Claim 11G; therefore, Claim 11G relates back to the timely original petition and is not barred by the statute of limitations.

Claim 11H

In Claim 11H, Byford claims that he was prejudiced by the cumulative effect of the failures of his trial counsel alleged in Claim 11. Third Amended Habeas Petition (ECF No. 92), p. 297. The Court determines that this claim of cumulative error is not barred by the statute of limitations, as underlying claims upon which it is based are not barred.

Claim 12A

In Claim 12A, Byford claims that the trial court imposed a requirement of equal consideration of the death penalty. Third Amended Habeas Petition (ECF No. 92), pp. 298–302.

In his timely first amended petition, Byford asserted a somewhat similar claim. *See* Amended Petition for Writ of Habeas Corpus (ECF No. 17), pp. 56–59. Also, on Byford's appeal in his first state habeas action, he asserted a claim sharing core operative facts with Claim 12A, and he incorporated his briefing of that claim into his timely original petition. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, pp. 8–9 (ECF No. 1-4, pp. 27–28); Appellant's Reply Brief, Exh. 7, pp. 4–5 (ECF No. 1-6, pp. 14–15); Appellant's Opening Brief, Exh. 9, pp. 10–11 (ECF No. 1-7, pp. 30–31); Appellant's Reply Brief, Exh. 10, pp. 6–7 (ECF No. 1-8, pp. 17–18); Appellant's Opening Brief, Exh. 13, pp. 9–10 (ECF No. 1-10, pp. 36–37); Appellant's Supplemental Opening Brief, Exh. 14, p. 3 (ECF No. 1-11, p. 4); Appellant's Reply Brief, Exh. 15, pp. 5–7 (ECF No. 1-11, pp. 39–41). The Court determines that these claims, asserted in Byford's timely original and first amended petitions, share a common core of operative facts with Claim 12A; therefore, Claim 12A relates back to the timely original and first amended petitions and is not barred by the statute of limitations.

Claim 12B

In Claim 12B, Byford claims that the trial court excused for cause a potential juror who could consider the death penalty, but who could not provide equal consideration to the death penalty. Third Amended Habeas Petition (ECF No. 92), pp. 302–06.

In his timely first amended petition, Byford asserted a somewhat similar claim. *See* Amended Petition for Writ of Habeas Corpus (ECF No. 17), pp. 60–63. Also, on Byford's appeal in his first state habeas action, he asserted a claim sharing core operative facts with Claim 12B, and he incorporated his briefing of that claim into his timely original petition. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3;

Appellant's Opening Brief, Exh. 6, pp. 6–7 (ECF No. 1-4, pp. 25–26); Appellant's Reply Brief, Exh. 7, pp. 2–3 (ECF No. 1-6, pp. 12–13); Appellant's Opening Brief, Exh. 9, pp. 8–9 (ECF No. 1-7, pp. 28–29); Appellant's Reply Brief, Exh. 10, pp. 4–5 (ECF No. 1-8, pp. 15–16); Appellant's Opening Brief, Exh. 13, pp. 6–8 (ECF No. 1-10, pp. 33–35); Appellant's Supplemental Opening Brief, Exh. 14, p. 2 (ECF No. 1-11, p. 3); Appellant's Reply Brief, Exh. 15, pp. 2–3 (ECF No. 1-11, pp. 36–38). The Court determines that these claims, asserted in Byford's timely original and first amended petitions, share a common core of operative facts with Claim 12B; therefore, Claim 12B relates back to the timely original and first amended petitions and is not barred by the statute of limitations.

Claim 12C

In Claim 12C, Byford claims that the trial court denied a challenge for cause against a juror. Third Amended Habeas Petition (ECF No. 92), pp. 306–09.

In his timely first amended petition, Byford asserted a somewhat similar claim. *See* Amended Petition for Writ of Habeas Corpus (ECF No. 17), pp. 63–65. The Court determines that this claim, asserted in Byford's timely first amended petition, shares a common core of operative facts with Claim 12C; therefore, Claim 12C relates back to the timely first amended petition and is not barred by the statute of limitations.

Claim 12D

In Claim 12D, Byford claims that the trial court demonstrated a lack of impartiality in its rehabilitation of potential jurors during jury selection. Third Amended Habeas Petition (ECF No. 92), pp. 310–14.

On the appeal in his first state habeas action, Byford asserted a claim sharing core operative facts with Claim 12D, and he incorporated his briefing of that claim into his timely original petition. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, pp. 7–8 (ECF No. 1-4, pp. 26–27); Appellant's Reply Brief, Exh. 7, pp. 3–4 (ECF No. 1-6, pp. 13–14); Appellant's Opening Brief, Exh. 9, pp. 9–10 (ECF No. 1-7, pp. 29–30); Appellant's Reply Brief, Exh. 10, pp. 5–6 (ECF No. 1-8,

pp. 16–17); Appellant's Opening Brief, Exh. 13, pp. 8–9 (ECF No. 1-10, pp. 35–36);
Appellant's Supplemental Opening Brief, Exh. 14, pp. 2–3 (ECF No. 1-11, pp. 3–4);
Appellant's Reply Brief, Exh. 15, pp. 4–5 (ECF No. 1-11, pp. 38–39). The Court
determines that this claim, asserted in Byford's timely original petition, shares a
common core of operative facts with Claim 12D; therefore, Claim 12D relates back to
the timely original petition and is not barred by the statute of limitations.

Claim 12E

In Claim 12E, Byford claims that he was prejudiced by the trial court's errors in
conducting jury voir dire. Third Amended Habeas Petition (ECF No. 92), p. 314. The
Court does not read Claim 12E to assert a standalone claim, but rather to set forth
argument regarding Claims 12A, 12B, 12C and 12D.

Claim 13

In Claim 13, Byford claims that the trial court refused to instruct the jury on all the
mitigating circumstances asserted by the defense. Third Amended Habeas Petition
(ECF No. 92), pp. 315–18.

Byford asserted a somewhat similar claim on his direct appeal before the Nevada
Supreme Court, and he incorporated his briefing of that claim into his timely original
petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3;
Appellant's Opening Brief, Exh. 3, pp. 74–75 (ECF No. 1-3, pp. 93–94); Appellant's
Reply Brief, Exh. 4, p. 21 (ECF No. 1-3, p. 144). Also, on the appeal in his first state
habeas action, Byford asserted a claim sharing core operative facts with Claim 13, and
he incorporated his briefing of that claim into his timely original petition. *See* Petition for
Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, pp. 55–56
(ECF No. 1-5, pp. 25–26); Appellant's Opening Brief, Exh. 9, pp. 64–65 (ECF No. 1-7,
pp. 83–84); Appellant's Reply Brief, Exh. 10, p. 35 (ECF No. 1-8, p. 46); Appellant's
Opening Brief, Exh. 13, pp. 72–73 (ECF No. 1-10, pp. 99–100); Appellant's
Supplemental Opening Brief, Exh. 14, p. 10 (ECF No. 1-11, p. 11); Appellant's Reply
Brief, Exh. 15, pp. 51–52 (ECF No. 1-11, pp. 85–86). The Court determines that these

58

1  claims, asserted in Byford's timely original petition, share a common core of operative

2  facts with Claim 13; therefore, Claim 13 relates back to the timely original petition and is

3  not barred by the statute of limitations.

4          Claim 14

5          In Claim 14, Byford claims that the trial court permitted the prosecution to make

6  misrepresentations to the jury and to argue improperly about statutorily delineated

7  mitigating circumstances, some of which were irrelevant to the case and not proffered

8  by the defense. Third Amended Habeas Petition (ECF No. 92), pp. 319–22.

9          On the appeal in his first state habeas action, Byford asserted a claim sharing

10  core operative facts with Claim 14, and he incorporated his briefing of that claim into his

11  timely original petition. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3;

12  Appellant's Opening Brief, Exh. 6, pp. 54–55 (ECF No. 1-5, pp. 24–25); Appellant's

13  Opening Brief, Exh. 9, pp. 62–64 (ECF No. 1-7, pp. 81–83); Appellant's Reply Brief,

14  Exh. 10, pp. 34–35 (ECF No. 1-8, pp. 45–46); Appellant's Opening Brief, Exh. 13, pp.

15  71–72 (ECF No. 1-10, pp. 98–99); Appellant's Supplemental Opening Brief, Exh. 14, pp.

16  9–10 (ECF No. 1-11, pp. 10–11); Appellant's Reply Brief, Exh. 15, pp. 50–51 (ECF No.

17  1-11, pp. 84–85). The Court determines that this claim, asserted in Byford's timely

18  original petition, shares a common core of operative facts with Claim 14; therefore,

19  Claim 14 relates back to the timely original petition and is not barred by the statute of

20  limitations.

21          Claim 15

22          In Claim 15, Byford claims that the trial court admitted highly prejudicial and

23  cumulative irrelevant evidence. Third Amended Habeas Petition (ECF No. 92), pp. 323–

24  30. Claim 15 includes two subparts—Claims 15A and 15B—but for purposes of this

25  order, Claim 15 can be considered in its entirety, as a single claim.

26          Byford asserted a somewhat similar claim on his direct appeal before the Nevada

27  Supreme Court, and he incorporated his briefing of that claim into his timely original

28  petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3;

59

Appellant's Opening Brief, Exh. 3, pp. 43–48 (ECF No. 1-3, pp. 62–67); Appellant's

Reply Brief, Exh. 4, pp. 11–12 (ECF No. 1-3, pp. 134–35). The Court determines that

this claim, asserted in Byford's timely original petition, shares a common core of

operative facts with Claim 15; therefore, Claim 15 relates back to the timely original

petition and is not barred by the statute of limitations.

Claim 16

In Claim 16, Byford claims that the trial court failed to record bench conferences

and meetings in chambers. Third Amended Habeas Petition (ECF No. 92), pp. 331–35.

On the appeal in his first state habeas action, Byford asserted a claim sharing

core operative facts with Claim 16, and he incorporated the briefing asserting that claim

into his timely original petition in this action. *See* Petition for Writ of Habeas Corpus

(ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, pp. 11–13 (ECF No. 1-4, pp. 30–

32); Appellant's Reply Brief, Exh. 7, p. 7 (ECF No. 1-6, p. 17); Appellant's Opening

Brief, Exh. 9, pp. 12–15 (ECF No. 1-7, pp. 32–35); Appellant's Reply Brief, Exh. 10, p. 8

(ECF No. 1-8, p. 19); Appellant's Opening Brief, Exh. 13, pp. 11–14 (ECF No. 1-10, pp.

38–41); Appellant's Supplemental Opening Brief, Exh. 14, p. 3 (ECF No. 1-11, p. 4);

Appellant's Reply Brief, Exh. 15, pp. 8–9 (ECF No. 1-11, pp. 42–43). The Court

determines that this claim, asserted in Byford's timely original petition, shares a

common core of operative facts with Claim 16; therefore, Claim 16 relates back to the

timely original petition and is not barred by the statute of limitations.

Claim 17

In Claim 17, Byford claims that critical court proceedings were conducted without

him present. Third Amended Habeas Petition (ECF No. 92), pp. 336–39.

On the appeal in his first state habeas action, Byford asserted a claim sharing

core operative facts with Claim 17, and he incorporated the briefing asserting that claim

into his timely original petition in this action. *See* Petition for Writ of Habeas Corpus

(ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, pp. 11–13 (ECF No. 1-4, pp. 30–

32); Appellant's Reply Brief, Exh. 7, p. 7 (ECF No. 1-6, p. 17); Appellant's Opening

Brief, Exh. 9, pp. 12–15 (ECF No. 1-7, pp. 32–35); Appellant's Reply Brief, Exh. 10, p. 8 (ECF No. 1-8, p. 19); Appellant's Opening Brief, Exh. 13, pp. 11–14 (ECF No. 1-10, pp. 38–41); Appellant's Supplemental Opening Brief, Exh. 14, p. 3 (ECF No. 1-11, p. 4); Appellant's Reply Brief, Exh. 15, pp. 8–9 (ECF No. 1-11, pp. 42–43). The Court determines that this claim, asserted in Byford's timely original petition, shares a common core of operative facts with Claim 17; therefore, Claim 17 relates back to the timely original petition and is not barred by the statute of limitations.

Claim 18

In Claim 18, Byford claims that one of the jurors did not meet the constitutional standard of impartiality. Third Amended Habeas Petition (ECF No. 92), pp. 340–42.

The Court determines that Byford did not, in either his timely original petition or his timely first amended petition, assert a claim sharing a common core of operative facts with Claim 18. Therefore, Claim 18 does not relate back to either the original or first amended petition, and it is barred by the statute of limitations. Claim 18 will be dismissed on this ground.

Claim 19A

In Claim 19A, Byford claims that the jurors received an erroneous anti-sympathy instruction. Third Amended Habeas Petition (ECF No. 92), pp. 343–46.

Byford asserted a somewhat similar claim on his direct appeal before the Nevada Supreme Court, and he incorporated his briefing of that claim into his timely original petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 3, pp. 71–73 (ECF No. 1-3, pp. 90–92); Appellant's Reply Brief, Exh. 4, p. 20 (ECF No. 1-3, pp. 143). The Court determines that this claim, asserted in Byford's timely original petition, shares a common core of operative facts with Claim 19A; therefore, Claim 19A relates back to the timely original petition and is not barred by the statute of limitations.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Claim 19B

In Claim 19B, Byford claims that the jurors received an erroneous commutation instruction. Third Amended Habeas Petition (ECF No. 92), pp. 346–48.

On the appeal in his first state habeas action, Byford asserted a claim sharing core operative facts with Claim 19B, and he incorporated his briefing of that claim into his timely original petition. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, p. 48 (ECF No. 1-5, p. 18); Appellant's Opening Brief, Exh. 9, pp. 56–57 (ECF No. 1-7, pp. 75–76); Appellant's Reply Brief, Exh. 10, p. 32 (ECF No. 1-8, p. 43); Appellant's Opening Brief, Exh. 13, p. 64 (ECF No. 1-10, p. 91); Appellant's Supplemental Opening Brief, Exh. 14, p. 9 (ECF No. 1-11, p. 10); Appellant's Reply Brief, Exh. 15, p. 46 (ECF No. 1-11, p. 80). The Court determines that this claim, asserted in Byford's timely original petition, shares a common core of operative facts with Claim 19B; therefore, Claim 19B relates back to the timely original petition and is not barred by the statute of limitations.

Claim 20

In Claim 20, Byford claims that the jury failed to find clearly applicable mitigating circumstances. Third Amended Habeas Petition (ECF No. 92), pp. 349–51.

On the appeal in his first state habeas action, Byford asserted a claim sharing core operative facts with Claim 20, and he incorporated his briefing of that claim into his timely original petition. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, pp. 56–59 (ECF No. 1-5, pp. 26–29); Appellant's Reply Brief, Exh. 7, p. 28 (ECF No. 1-6, p. 38); Appellant's Opening Brief, Exh. 9, pp. 65–67 (ECF No. 1-7, pp. 84–86); Appellant's Reply Brief, Exh. 10, pp. 35–36 (ECF No. 1-8, pp. 46–47); Appellant's Opening Brief, Exh. 13, pp. 73–76 (ECF No. 1-10, pp. 100–03); Appellant's Supplemental Opening Brief, Exh. 14, p. 10 (ECF No. 1-11, p. 11); Appellant's Reply Brief, Exh. 15, pp. 52–53 (ECF No. 1-11, pp. 86–87). The Court determines that this claim, asserted in Byford's timely original petition, shares a

common core of operative facts with Claim 20; therefore, Claim 20 relates back to the timely original petition and is not barred by the statute of limitations.

Claim 21

In Claim 21, Byford claims that character evidence was improperly used in the weighing process for determining death-eligibility. Third Amended Habeas Petition (ECF No. 92), pp. 352–54.

Byford asserted a somewhat similar claim on his direct appeal before the Nevada Supreme Court, and he incorporated his briefing of that claim into his timely original petition in this action. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 3, pp. 76–79 (ECF No. 1-3, pp. 95–98); Appellant's Reply Brief, Exh. 4, pp. 22–23 (ECF No. 1-3, pp. 145–48). The Court determines that this claim, asserted in Byford's timely original petition, shares a common core of operative facts with Claim 21; therefore, Claim 21 relates back to the timely original petition and is not barred by the statute of limitations.

Claim 22

In Claim 22, Byford claims that the elected officials who adjudicated Byford's trial, appeal and state post-conviction petitions were biased. Third Amended Habeas Petition (ECF No. 92), pp. 355–58.

The Court determines that Byford did not, in either his timely original petition or his timely first amended petition, assert a claim sharing a common core of operative facts with Claim 22. Therefore, Claim 22 does not relate back to either the original or first amended petition, and it is barred by the statute of limitations. Claim 22 will be dismissed on this ground.

Claim 23

In Claim 23, Byford claims that appellate counsel was ineffective for not raising on Byford's direct appeal all the claims contained in Claims 3, 4B, 4C, 5A, 5C, 5E, 5F, 5G, 9, 10, 12, 14, 16, 17, 19B, 20, 22, 24, 25 and 26, and for not raising all the federal

constitutional bases for the claims that were asserted on Byford's direct appeal. Third Amended Habeas Petition (ECF No. 92), pp. 359–60.

The Court determines that Claim 23 relates back to Byford's timely original and/or first amended petition, with respect to his claims that his appellate counsel was ineffective for not raising the claims in Claims 3, 4B, 4C, 5A, 5C, 5E, 5F, 5G, 9, 10, 12, 14, 16, 17, 19B, 20, 24A, 24B, 24C, 24D(5) and 24E, for the reasons stated in the discussions of those underlying claims. Those claims in Claim 23 are not barred by the statute of limitations.

The Court determines that Claim 23 does not relate back to Byford's timely original and/or first amended petition, with respect to his claims that his appellate counsel was ineffective for not raising the claims in Claims 22, 24D(1)–(4), 25 and 26, for the reasons stated in the discussions of those underlying claims. Those claims in Claim 23 are barred by the statute of limitations and will be dismissed on that ground.

Claim 24A

In Claim 24A, Byford claims that Nevada's lethal-injection protocol is unconstitutional. Third Amended Habeas Petition (ECF No. 92), pp. 361–84.

On the appeal in his first state habeas action, Byford asserted a claim sharing core operative facts with Claim 24A, and he incorporated his briefing of that claim into his timely original petition. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, p. 66 (ECF No. 1-5, p. 36); Appellant's Reply Brief, Exh. 7, pp. 29–30 (ECF No. 1-6, pp. 39–40); Appellant's Opening Brief, Exh. 9, pp. 72–73 (ECF No. 1-7, pp. 91–92); Appellant's Reply Brief, Exh. 10, p. 38 (ECF No. 1-8, p. 49); Appellant's Opening Brief, Exh. 13, p. 82 (ECF No. 1-10, p. 109). The Court determines that this claim, asserted in Byford's timely original petition, shares a common core of operative facts with Claim 24A; therefore, Claim 24A relates back to the timely original petition and is not barred by the statute of limitations.

Claim 24B

In Claim 24B, Byford claims that Nevada's death-penalty scheme does not genuinely narrow the class of persons eligible for the death penalty. Third Amended Habeas Petition (ECF No. 92), pp. 384–87.

On the appeal in his first state habeas action, Byford asserted a claim sharing core operative facts with Claim 24B, and he incorporated his briefing of that claim into his timely original petition. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, pp. 65–66 (ECF No. 1-5, pp. 35–36); Appellant's Reply Brief, Exh. 7, p. 29 (ECF No. 1-6, p. 39); Appellant's Opening Brief, Exh. 9, pp. 71–72 (ECF No. 1-7, pp. 90–91); Appellant's Reply Brief, Exh. 10, p. 37 (ECF No. 1-8, p. 48); Appellant's Opening Brief, Exh. 13, pp. 81–82 (ECF No. 1-10, pp. 108–09); Appellant's Reply Brief, Exh. 15, pp. 55–56 (ECF No. 1-11, pp. 89–90). The Court determines that this claim, asserted in Byford's timely original petition, shares a common core of operative facts with Claim 24B; therefore, Claim 24B relates back to the timely original petition and is not barred by the statute of limitations.

Claim 24C

In Claim 24C, Byford claims that the death penalty is cruel and unusual. Third Amended Habeas Petition (ECF No. 92), p. 388.

On the appeal in his first state habeas action, Byford asserted a claim sharing core operative facts with Claim 24C, and he incorporated his briefing of that claim into his timely original petition. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, p. 66 (ECF No. 1-5, p. 36); Appellant's Opening Brief, Exh. 9, p. 73 (ECF No. 1-7, p. 92); Appellant's Opening Brief, Exh. 13, p. 83 (ECF No. 1-10, p. 110); Appellant's Supplemental Opening Brief, Exh. 14, p. 11 (ECF No. 1-11, p. 12); Appellant's Reply Brief, Exh. 15, p. 56 (ECF No. 1-11, p. 90). The Court determines that this claim, asserted in Byford's timely original petition, shares a common core of operative facts with Claim 24C; therefore, Claim 24C relates back to the timely original petition and is not barred by the statute of limitations.

Claim 24D(1)–(4)

In Claim 24D(1)–(4), Byford claims that it is unconstitutional to impose death on an individual under the age of twenty-one at the time of his crime. Third Amended Habeas Petition (ECF No. 92), pp. 388–400.

The Court determines that Byford did not, in either his timely original petition or his timely first amended petition, assert a claim sharing a common core of operative facts with Claim 24D(1)–(4). Therefore, Claim 24D(1)–(4) does not relate back to either the timely original petition or the timely first amended petition.

Byford cites 28 U.S.C. § 2244(d)(1)(D) and argues that "[t]his claim is timely because it is based on new scientific discoveries," and that "'[t]he new science that forms the factual predicate of this claim could not have been discovered through the exercise of reasonable diligence more than a year prior to the filing of the Third Amended Petition." Opposition to Motion to Dismiss (ECF No. 116), p. 144. That argument, though, is wholly conclusory; Byford does not identify the scientific discoveries that allegedly form the factual predicate for this claim that he allegedly could not have discovered before January 30, 2019 (one year before he filed his third amended petition). Byford does not make a showing that application of section 2244(d)(1)(D) is warranted.

Claim 24D(1)–(4) is barred by the statute of limitations, and it will be dismissed on that ground.

Claim 24D(5)

In Claim 24D(5), Byford claims that Nevada's death-penalty scheme is unconstitutional because executive clemency is unavailable. Third Amended Habeas Petition (ECF No. 92), pp. 400–01.

On the appeal in his first state habeas action, Byford asserted a claim sharing core operative facts with Claim 24D(5), and he incorporated his briefing of that claim into his timely original petition. *See* Petition for Writ of Habeas Corpus (ECF No. 1), p. 3; Appellant's Opening Brief, Exh. 6, pp. 67–68 (ECF No. 1-5, pp. 37–38); Appellant's

Opening Brief, Exh. 9, pp. 74–75 (ECF No. 1-7, pp. 93–94); Appellant's Opening Brief, Exh. 13, pp. 84–85 (ECF No. 1-10, pp. 111–12); Appellant's Reply Brief, Exh. 15, p. 56 (ECF No. 1-11, p. 90). The Court determines that this claim, asserted in Byford's timely original petition, shares a common core of operative facts with Claim 24D(5); therefore, Claim 24D(5) relates back to the timely original petition and is not barred by the statute of limitations.

Claim 24E

In Claim 24E, Byford claims that execution in a manner that violates the constitution is prejudicial per se. Third Amended Habeas Petition (ECF No. 92), p. 401. The Court does not read Claim 24E to assert a standalone claim, but rather to set forth argument regarding Claims 24A, 24B, 24C and 24D.

Claim 25

In Claim 25, Byford claims that the Nevada Supreme Court failed to conduct fair and adequate appellate review. Third Amended Habeas Petition (ECF No. 92), pp. 402–08.

The Court determines that Byford did not, in either his timely original petition or his timely first amended petition, assert a claim sharing a common core of operative facts with Claim 25. Therefore, Claim 25 does not relate back to either the original or first amended petition, and it is barred by the statute of limitations. Claim 25 will be dismissed on this ground.

Claim 26

In Claim 26, Byford claims that the trial court's failure to give a jury instruction defining the standard of proof as beyond a reasonable doubt in the weighing stage of Byford's penalty hearing violated his federal constitutional rights. Third Amended Habeas Petition (ECF No. 92), pp. 409–10.

The Court determines that Byford did not, in either his timely original petition or his timely first amended petition, assert a claim sharing a common core of operative

facts with Claim 26. Therefore, Claim 26 does not relate back to either of those timely-filed petitions.

Byford cites 28 U.S.C. § 2244(d)(1)(C), arguing that this claim was timely filed because the claim is based on *Hurst v. Florida*, 136 S.Ct. 616 (2016), which was decided on January 12, 2016. *See* Opposition to Motion to Dismiss (ECF No. 116), p. 151. Byford argues:

> The Claim is not untimely because it is based upon the assertion of a constitutional right that the United States Supreme Court recognized for the first time on January 12, 2016 in its *Hurst* decision. As the State noted, Byford presented this claim in his third amended state postconviction petition, which was filed January 11, 2017, and thus within one year of the date on which the new constitutional right was initially recognized.

*Id*. (citations omitted).

Byford's argument lacks merit. Byford's assertion of this claim in a habeas petition filed in state court on January 11, 2017, one day short of the first anniversary of the *Hurst* decision does not necessarily render timely his assertion of the claim in his third amended petition in this case on January 30, 2020. Byford does not argue that any statutory tolling based on his third state habeas action would render the claim in this action timely; it appears that it would not, as Byford's third state habeas action concluded on September 13, 2019, more than four months before his third amended petition was filed in this action. *See* Order of Affirmance, Exh. 49 (ECF No. 109-21).

Moreover, for 28 U.S.C. § 2244(d)(1)(C) to apply, *Hurst* must represent a new rule of constitutional law made retroactive to cases on collateral review. *See* 28 U.S.C. § 2244(d)(1)(C). That is not the case, however. The Supreme Court has ruled that *Hurst* does not establish a new rule that applies retroactively on collateral review. *See McKinney v. Arizona*, 140 S.Ct. 702, 708 (2020) ("[*Ring v. Arizona*, 536 U.S. 584 (2002)] and *Hurst* do not apply retroactively on collateral review." (citing *Schriro v. Summerlin*, 542 U.S. 348, 358 (2004))).

The Court determines that Claim 26 is barred by the statute of limitations, and it will be dismissed on that ground.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Claim 27

In Claim 27, Byford claims that he was prejudiced by the cumulative effect of the errors alleged in his third amended habeas petition. Third Amended Habeas Petition (ECF No. 92), pp. 411–19. The Court determines that this claim of cumulative error is not barred by the statute of limitations, as underlying claims upon which it is based are not barred.

E.      Motion for Leave to Conduct Discovery

Byford requests leave to conduct discovery regarding the question of procedural default of certain of his claims and regarding the merits of certain of his claims. *See* Motion for Leave to Conduct Discovery (ECF Nos. 117, 121). In this order, the Court denies Respondents' motion to dismiss, without prejudice, with respect to the procedural default issues, and the Court does not in this order address the merits of any of Byford's claims. Therefore, there is no showing of good cause for Byford to conduct discovery relative to the motion to dismiss. The Court will deny Byford's motion for leave to conduct discovery. Byford may file a new motion for leave to conduct discovery, if factually and legally justified, in conjunction with his reply to Respondents' answer, as contemplated in the scheduling order entered October 24, 2019 (ECF No. 88).

F.      Motion for Evidentiary Hearing

Byford requests an evidentiary hearing regarding the question of procedural default of certain of his claims. *See* Motion for Evidentiary Hearing (ECF No. 119). In this order, the Court denies Respondents' motion to dismiss. without prejudice, with respect to the procedural default issues. Therefore, an evidentiary hearing relative to those issues is unwarranted at this time. Byford's motion for an evidentiary hearing will be denied. Byford may file a new motion for an evidentiary hearing, if factually and legally justified, in conjunction with his reply to Respondents' answer, as contemplated in the scheduling order entered October 24, 2019 (ECF No. 88).

IV.      CONCLUSION

     **IT IS THEREFORE ORDERED** that Respondents' Motion to Dismiss (ECF No. 107) is **GRANTED IN PART AND DENIED IN PART**. The following claims in Petitioner's third amended habeas petition are dismissed as barred by the statute of limitations: Claims 1D, 1U, 1Y, 18, 22, 24D(1)–(4), 25, 26, and the claims in Claim 23 that Byford's appellate counsel was ineffective for not raising the claims in Claims 22, 24D(1)–(4), 25 and 26. In all other respects, Respondents' Motion to Dismiss is denied. This order is without prejudice to Respondents asserting the defenses of exhaustion, procedural default and ripeness in their answer to the remaining claims in Petitioner's third amended habeas petition.

     **IT IS FURTHER ORDERED** that Petitioner's Motion for Leave to Conduct Discovery (ECF Nos. 117, 121) is **DENIED**.

     **IT IS FURTHER ORDERED** that Petitioner's Motion for Evidentiary Hearing (ECF No. 119) is **DENIED**.

     **IT IS FURTHER ORDERED** that Respondents shall, within 180 days from the date of this order, file an answer, responding to the remaining claims in Petitioner's Third Amended Petition for Writ of Habeas Corpus (ECF No. 92). The time for Petitioner to file a reply to Respondents' answer, as set forth in the October 24, 2019, scheduling order (ECF No. 88), will be extended to 180 days. In all other respects, the schedule for further proceedings set forth in the October 24, 2019, scheduling order (ECF No. 88) will remain in effect.

     DATED August 27, 2021.

                                  _____
                                  JAMES C. MAHAN,
                                  UNITED STATES DISTRICT JUDGE